IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REGENERON PHARMACEUTICALS, INC. | ) | C. A. No.: 22-00697-RGA-JLH |
| | ) | |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | **REDACTED PUBLIC VERSION** |
| | ) | **FILED ON: October 26, 2022** |
| AMGEN INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF OF DEFENDANT AMGEN INC.
IN SUPPORT OF ITS MOTION TO DISMISS**

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Taylor E. Hallowell (No. 6815)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

GIBSON, DUNN & CRUTCHER LLP
Eric J. Stock
Ben A. Sherwood
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

Stephen Weissman
Richard G. Parker
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 955-8500

Ashley E. Johnson
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100

*Attorneys for Amgen Inc.*

Dated: October 19, 2022

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.      The Court May Consider the Actual Terms of the Contracts Amgen Submitted. ............. 2

II.     Regeneron's Anticompetitive Conduct Allegations Fail. .................................................... 5

        A.      Regeneron Fails Adequately to Allege Illegal Exclusive Dealing Regardless of Whether the Court Considers Amgen's Contracts. ......................... 5

            1.      Regeneron's Claims Fail on the Face of the Complaint. ........................... 5

            2.      Amgen's Actual Contracts Confirm Regeneron's Pleading Failures. ................................................................................................... 7

        B.      Regeneron's Price-Based Allegations Fall Short. ................................................... 8

III.    Regeneron Has Not Adequately Alleged That Amgen Conditions Rebates On A Monopoly Drug To Exclude Regeneron's Praluent® ....................................................... 10

        A.      Amgen's Contracts Show That It Does Not Condition Otezla® Rebates on Repatha® Formulary Coverage. ......................................................................... 10

        B.      Regeneron Fails to Allege That Enbrel® Has Monopoly or Market Power ......... 11

IV.    Regeneron's State Law Claims Are Inadequate. ............................................................. 11

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*3Shape TRIOS A/S v. Align Tech., Inc.*,
  2020 WL 2559777 (D. Del. May 20, 2020) ................................................................. 7, 9, 10

*In re Amarin Corp.*,
  2015 WL 3954190 (D.N.J. June 29, 2015) ............................................................................ 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................. 5

*Baker v. Hartford Underwriters Ins. Co.*,
  490 Fed. Appx. 467 (3d Cir. 2012) ..................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. 4

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993) .............................................................................................................. 9

*Eagle Pharms., Inc. v. Eli Lilly & Co.*,
  2018 WL 6201704 (D. Del. Nov. 27, 2018) .......................................................................... 4

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*,
  821 F.3d 394 (3d Cir. 2016) .................................................................................................. 7

*In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*,
  44 F.4th 959, 2022 WL 3009140 (10th Cir. 2022) ................................................................ 5

*Fisherman's Wharf Bay Cruise Corp. v. Super. Ct. of San Francisco*,
  114 Cal. App. 4th 309 (2003) .............................................................................................. 11

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
  482 F.3d 247 (3d Cir. 2007) ................................................................................................ 12

*Globespanvirata, Inc. v. Tex. Instrument, Inc.*,
  2006 WL 543155 (D.N.J. Mar. 3, 2006) ............................................................................. 11

*Int'l Constr. Prod. LLC v. Caterpillar Inc.*,
  2016 WL 264909 (D. Del. Jan. 21, 2016) ............................................................................. 5

*Kingray, Inc. v. NBA, Inc.*,
  188 F. Supp. 2d 1177 (S.D. Cal. 2002) ............................................................................. 3, 4

*LePage's Inc. v. 3M*,
  324 F.3d 141 (3d Cir. 2003) .................................................................................................. 9

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re NorVergence, Inc.*,
  384 B.R. 315 (Bankr. D.N.J. 2008) ...............................................................................4

*Pension Benefits Guar. Corp. v. White Consol. Indus.*,
  998 F.2d 1192 (3d Cir. 1993) .........................................................................................2

*PNY Techs., Inc. v. SanDisk Corp.*,
  2014 WL 1677521 (N.D. Cal. Apr. 25, 2014) ...............................................................6

*Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
  2013 WL 3936394 (C.D. Cal. July 30, 2013) ............................................................3, 6

*Ranke v. Sanofi-Synthelabo Inc.*,
  436 F.3d 197 (3d Cir. 2006) ...........................................................................................5

*Scheffler v. TD Bank, N.A.*,
  2019 WL 192651 (D.N.J. Jan. 15, 2019) .......................................................................4

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014) ......................................................................................2, 3

*SEI Global Servs., Inc. v. SS&C Advent*,
  496 F. Supp. 3d 883 (E.D. Pa. 2020) ...........................................................................11

*Shire US, Inc. v. Allergan, Inc.*,
  375 F. Supp. 3d 538 (D.N.J. 2019) ........................................................................10, 11

*SmithKline Corp. v. Eli Lilly & Co*,
  575 F.2d 1056 (3d Cir. 1978) .......................................................................................11

*Tomaszewski v. Trevana, Inc.*,
  482 F. Supp. 3d 317 (E.D. Pa. 2020) .............................................................................3

*U.S. v. Dentsply Int'l, Inc.*,
  399 F.3d 181 (3d Cir. 2005) ......................................................................................6, 7

*UAS Mgmt., Inc. v. Master Misericordiae Hosp.*,
  169 Cal. App. 4th 357 (2008) ......................................................................................12

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) ......................................................................................6, 9

**Rules**

Fed. R. Civ. P. 15(a)(1)(B) ....................................................................................................12

## PRELIMINARY STATEMENT

Regeneron filed its Complaint based on what it asserted were the terms of contracts Amgen entered into with two customers. Although the contracts themselves show that Regeneron is wrong, Regeneron has doubled down on its position. It asks the Court to ignore the contracts upon which it bases its claims, speculates that discovery might enable it to show facts inconsistent with the express terms of the very contracts it relies upon in its Complaint, and urges the Court to permit massive and burdensome discovery to ensue before even considering the contracts at issue. This approach is contrary to law and puts the cart before the horse. Amgen's motion should be granted.

*First*, while it is not surprising that Regeneron is fighting to keep the Court from considering the contracts given their fatal impact on its claims, the Court can and should consider the contracts. What matters under the law is whether the Complaint is *based on* the documents submitted to the Court, not whether Regeneron saw them before suing. Courts regularly consider documents submitted by a defendant on a motion to dismiss that the plaintiff has not seen before, particularly where a plaintiff's claim is based on speculation about what those document say.

*Second*, there are three fundamental deficiencies in the Complaint requiring dismissal:

1. *Lack of substantial foreclosure.* Putting aside the actual contracts, Regeneron has, at best, plausibly pled that Amgen entered into *only two* exclusive agreements that together cover less than 23% of the market, and are not of long duration or difficult to terminate. That is not enough for substantial foreclosure. Regeneron argues that foreclosure levels below 40%–50% can *sometimes* be sufficient, but that is so only where other factual circumstances strongly support such a finding, and no such facts are pled here. Moreover, the actual terms of the Optum Commercial contract show that the foreclosure level is even lower, because that agreement is manifestly *not* exclusive.

2. *Failure to satisfy requirements for price-based claims.* Regeneron does not plead Amgen's low prices are *likely* to exclude it from the market. And its alleged rebate calculations are based

1

on supposed conditional Otezla® rebates that are not in the contracts.  Its price-based claims fail.

3.      *No bundling with a drug with market power.*  Regeneron tries to confuse the Otezla® issue by noting that Otezla® is mentioned in ███████████████████████ ███████████  That is irrelevant because no Otezla® rebates are conditioned on Repatha® coverage.  And Regeneron cannot plausibly claim Enbrel® has market power since it concedes Enbrel® is losing sales to Humira®, and makes no allegations about the drugs' market shares.

## ARGUMENT

**I.      The Court May Consider the Actual Terms of the Contracts Amgen Submitted.**

Regeneron bases its claims on what it refers to as Amgen's "illegal, anticompetitive bundled rebate agreements" with "two major Third-Party Payors." D.I. 1 ("Compl.") ¶¶ 68, 75; *see also id.* ¶ 68–101.  Regeneron now asks the Court to decide this motion based not on the *actual terms* of those agreements, but on Regeneron's prior (and demonstrably incorrect) speculation about their content.  But no legal rule requires this Court to rely on mischaracterizations of a document—rather than the document's actual terms—when the document is the basis of the plaintiff's claims.  Instead, it is the well-established practice of federal courts to "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefits Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Regeneron concedes the Court could consider the contracts if Regeneron had seen them before filing the Complaint.  *See* Opp. at 9.  But it contends that its ignorance of the actual contract terms when it drafted its Complaint requires that this Court pretend to be ignorant of them too.  That is not the law, and the cases Regeneron relies upon involved situations where a defendant submitted materials to the court that, unlike here, *were not the bases of the plaintiffs' claims*.

In *Schmidt v. Skolas*, for example, the defendants allegedly "breached their fiduciary duties

2

by disposing of promising drug technologies . . . for far less than their true value." 770 F.3d 241, 245 (3d Cir. 2014). The Third Circuit concluded that "the complaint was not 'based' on [the] press releases or updates" the defendant submitted and that the plaintiff "claim[ed] he never saw" and "dispute[d] . . . were publicly posted." *Id.* at 249–50. Instead, the plaintiff's claims were based on the "sales transactions" that allegedly constituted the alleged breaches of fiduciary duty. *Id.* Similarly, in *Tomaszewski v. Trevana, Inc.*, the plaintiff's securities fraud claims were based not on the FDA meeting minutes submitted by the defendant and to which the plaintiff had lacked access, but instead on the alleged misstatements made by the defendant's executives about how those meetings went. *See* 482 F. Supp. 3d 317, 323, 327 (E.D. Pa. 2020).

Here, the terms of Amgen's agreements with ESI and Optum *are* the basis of Regeneron's claims. *See, e.g.*, Compl. ¶ 186. In that situation, i.e., where a defendant's allegedly unlawful contracts are the basis of a plaintiff's antitrust claims, courts consider the actual contracts on a motion to dismiss—even where they are confidential and between the defendant and third parties. *See Pro Search Plus, LLC v. VFM Leonardo, Inc.*, 2013 WL 3936394, at *2 & n.2 (C.D. Cal. July 30, 2013) (considering confidential contracts between the defendant and third parties that the defendant had submitted with its motion to dismiss and that the plaintiff had challenged as anticompetitive); *Kingray, Inc. v. NBA, Inc.*, 188 F. Supp. 2d 1177, 1190 (S.D. Cal. 2002) (same).

Regeneron quotes *Schmidt* and other sources addressing a plaintiff's lack of access to a document as a reason for a court not to consider it. Opp. at 9. But as *ProSearch* and *Kingray* show, that factor is not determinative where a plaintiff bases its claims on what it guesses are a contract's terms. Rather, the rule allowing a court to consider documents "integral to or explicitly relied upon in the complaint," *Schmidt,* 770 F.3d at 249 (quotations/emphases omitted), permits consideration of documents the plaintiff never saw but rather guessed as to their contents and relied

3

upon for its claims. That makes sense because if a claim is deemed implausible where a plaintiff has actually seen, but mischaracterizes, the document, then such a claim is equally implausible where, as here, plaintiff has never seen the document and speculates incorrectly about its contents.

Indeed, Regeneron's suggestion that courts never consider documents a plaintiff did not previously see is wrong, as shown by antitrust cases like *ProSearch* and *Kingray,* as well as other decisions within this Circuit. *See, e.g., In re Amarin Corp.*, 2015 WL 3954190, at *5 n.9 (D.N.J. June 29, 2015) (considering documents that were "not publicly available and were not available to the Plaintiff at the time he filed his Complaint"); *In re NorVergence, Inc.*, 384 B.R. 315, 366 (Bankr. D.N.J. 2008) (same); *Scheffler v. TD Bank, N.A.*, 2019 WL 192651, at *2 (D.N.J. Jan. 15, 2019) ("Although Plaintiff contends that she did not have a copy when she filed the Complaint, Plaintiff does not allege that her claims are based on any contract other than the . . . Agreement.").

Moreover, due to the "unusually high cost of discovery" in antitrust cases, the Supreme Court has cautioned courts to carefully review the plausibility of antitrust claims before allowing them to proceed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[S]ome threshold of plausibility must be crossed at the outset before a[n] . . . antitrust case should be permitted to go into its inevitably costly and protracted discovery phase." (quotations omitted)); *see also Eagle Pharms., Inc. v. Eli Lilly & Co.*, 2018 WL 6201704, at *3 (D. Del. Nov. 27, 2018) ("antitrust specific discovery . . . can be voluminous, time-consuming, and expensive" (quotations omitted)). Allowing an antitrust case to proceed based on false characterizations would violate that principle.

Nor should this Court ignore the actual contract terms based on Regeneron's groundless speculation as to what other "evidence may show" in discovery and that, it claims, may contradict the express terms of the very contracts upon which its Complaint is based. Opp. at 11. Faced with contracts that refute its allegations, Regeneron speculates about unalleged "verbal agreements"

4

and other unpled conduct that it theorizes could reflect agreements not in the contracts. *See id.* at 11–12.[1] But Regeneron may access Amgen's records only after it pleads a plausible claim. The mere "possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "To the extent any [wrongdoing] was believed to have occurred, it should have been pled in the complaint." *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006). Regeneron has pled no facts plausibly suggesting Amgen and its customers omitted key financial terms from their contracts (and the detailed contracts belie such a suggestion); its effort to put the "cart before the horse" by trying to find facts in discovery to cure its pleading deficiencies has no merit. *See id.*

## II. Regeneron's Anticompetitive Conduct Allegations Fail.

### A. Regeneron Fails Adequately to Allege Illegal Exclusive Dealing Regardless of Whether the Court Considers Amgen's Contracts.

#### 1. Regeneron's Claims Fail on the Face of the Complaint.

Regeneron fails to plead substantial foreclosure. *See* Br. at 13–15; *see also Int'l Constr. Prod. LLC v. Caterpillar Inc.*, 2016 WL 264909, at *6–7 (D. Del. Jan. 21, 2016) (failure to plead substantial foreclosure requires dismissal at pleading stage). Regeneron insists ESI Part D might have selected Repatha® over Praluent® as an administrative convenience after ESI Commercial did, *see* Opp. at 22 & n.18, but that is insufficient to plead foreclosure because ESI Part D could forego this alleged "convenience." Br. at 11–12. Moreover, contrary to Regeneron's plea that its theory of "spillover foreclosure" (i.e., that Praluent®'s exclusion from some formularies will cause doctors to favor Repatha® more broadly) is "fact-specific," the only federal appellate court to have considered that theory rejected it as *legally* erroneous. *See In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 2022 WL 3009140, at *24 (10th Cir. 2022); *see also* Br. at 14 n.13.

---

[1] Regeneron also speculates about Amgen's redactions to the contracts for the drugs not at issue. Opp. at 12. If the Court so requests, Amgen will provide, for *in camera* inspection, unredacted copies of the agreements it submitted, and any other agreements the Court believes it needs to rule.

5

That leaves only the ESI Commercial and Optum Commercial contracts, for which Regeneron claims foreclosure of only 15.27% and 7.05%, totaling 22.32%. Compl. ¶ 96. That percentage is far short of the "40% to 50% . . . usually required" to be "substantial." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 286 (3d Cir. 2012).

Moreover, Regeneron fails to plausibly allege contracts of sufficient duration to foreclose rivals, *see* Br. at 15–16, requiring dismissal on the pleadings. *See, e.g.*, *Pro Search Plus, LLC v. VFM Leonardo, Inc.*, 2013 WL 3936394, at *4 (C.D. Cal. July 30, 2013); *PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 1677521, at *5–6 (N.D. Cal. Apr. 25, 2014). Regeneron fails to allege any significant duration, or that the contracts cannot be terminated at will. *See* Br. at 15–16; Compl. ¶¶ 80–85. Regeneron insists these issues must be resolved after discovery, but to receive discovery, it must make a threshold pleading of anticompetitive, long-term exclusion. Br. at 9–10.

Regeneron mistakenly relies on decisions inapposite because they involve a key feature absent here—the inability of customers to switch from the alleged monopolist's products to a rival's without losing significant sales. *ZF Meritor* emphasized this factor when evaluating the claims in that case, explaining that exclusive deals with the alleged monopolist were not, in practice, terminable because customers would lose access to the monopolist's products, which end users demanded. *See* 696 F.3d at 277–78 ("[L]osing Eaton was not an option"). That was also crucial in *Dentsply*, where the "'strong economic incentive,'" Opp. at 23, that prevented dealers from terminating their contracts was the "'all-or-nothing' choice" to either deal with Dentsply or switch to a rival and lose virtually all their sales. *See* 399 F.3d 181, 194–96 (3d Cir. 2005).

Crucially, here, Regeneron does not claim that a PBM customer terminating its exclusive relationship with Repatha® and switching to Praluent® will lose any sales at all. This means that, unlike in *Dentsply*, *ZF Meritor*, and other cases relied upon by Regeneron, *see* Opp. at 21–22,

6

there are no facts pled here suggesting Optum, ESI, or other customers of Amgen are locked into an exclusive relationship with Repatha® regardless of the contract duration, due to market or customer demands. And, indeed, even under the facts pled, PBMs regularly switch between the two drugs depending on which one is priced more competitively. Br. at 5, 18.

The only consequence Regeneron alleges for switching from Repatha® to Praluent® is that the customer loses some Enbrel® (or Otezla®) rebates. Compl. ¶ 148; *see also id.* ¶¶ 72, 79. But "the threat of a lost discount is a far cry from the anticompetitive conduct at issue in . . . *Dentsply*." *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 407 (3d Cir. 2016). And if Regeneron's claim that customers have "'a strong economic incentive'" to stay with Repatha® is based on high rebates, that is a claim that *price* is the primary means of alleged exclusion—a price-based claim subject to a separate test (which Regeneron fails). *See infra* Argument § II-B; Br. at 10, 19–20.

Finally, Regeneron's citation to this Court's rule of reason analysis in *3Shape TRIOS A/S v. Align Tech., Inc.* is misplaced. *See* Opp. at 18–19. In that case, the plaintiff alleged that the defendant's contracts were "multi-year, *de facto* exclusive dealing contracts" that "lock[ed] [customers] into using" the plaintiff's products and imposed "commitments that could only be met if participating [customers dealt] exclusively" with the defendant. 2020 WL 2559777, at *6 (D. Del. May 20, 2020). Here, Regeneron does not plausibly allege any of these characteristics, which supported *3Shape*'s finding that the plaintiff had adequately alleged substantial foreclosure. *Id.*

### 2. Amgen's Actual Contracts Confirm Regeneron's Pleading Failures.

The plain terms of the Optum Commercial agreement ██████████████████ ████████████████ ████████████████████████████ █████ ███████████████ Br. at 7 n.7. Regeneron confuses the facts in its opposition by referring to what it calls the "most restrictive formulary coverage option" in the Optum contract, which it claims requires Optum █████████████████████████████████

7



*See* Opp. at 15 (citing Section 5A(v) of the contract). This statement is mistaken. *First*, to the extent Regeneron is referring to ▮ ▮ *See* D.I. 19, Ex. D, at Ex. A § 5A(iv)(d)(3); *id.* § 5A(v)(a) (p. 19) ( ▮ ). *Second*, to the extent Regeneron is referring to other portions of Section 5A(v), ▮ *E.g.,* Compl. ¶ 18; *see* D.I. 19, Ex. D, at Ex. A § 5A(v). ▮

Omitting Optum results in a plainly inadequate foreclosure level of 15.27%. The Optum Commercial and ESI Commercial agreements also reveal the contracts' short duration. Br. at 15–16. In view of these actual contract terms, there is no plausible claim of substantial foreclosure.

**B.    Regeneron's Price-Based Allegations Fall Short.**

Regeneron's below-cost pricing allegations are based on a calculation that incorrectly assumes Amgen conditions Otezla® rebates on Repatha® formulary coverage. *See* Opp. at 16–17. Amgen's contracts, however, show that it offers no such rebates on Otezla®. *See* Br. at 7–8. Regeneron's Otezla®-dependent calculations thus cannot support its claims. *See id.* at 19.[2]

---

[2] The below-cost pricing example used in Regeneron's brief is also misleading because it takes alleged bundled rebate levels for ESI and compares them not to the total value of Amgen's sales for ESI (as was done in the Complaint) but rather to the supposed value of the business gained by Amgen. Opp. at 14. But Regeneron pleads no basis for attributing rebates solely to new sales gained by Amgen. Among other things, rebates may also be provided to retain existing sales. The Complaint makes no use of Regeneron's newly-invented methodology nor does it provide any support for its use in this case. Compl. ¶¶ 89–94.

The actual contracts notwithstanding, Regeneron fails to allege that Amgen's low prices will exclude Praluent® from the market. Regeneron mischaracterizes Amgen as arguing that Regeneron "must be injured to death before it can bring suit." Opp. at 17. Not so. The law imposes strict requirements on an antitrust plaintiff's claims *when they challenge low prices*, to avoid chilling procompetitive competition. A plaintiff must allege that it "would *likely* succumb" to the low pricing. *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993) (emphasis added). But Regeneron pleads only that Amgen's pricing "*could* be fatal to Praluent®," not that it is *likely* to be. Compl. ¶ 159; *see also* Br. at 19.

Regeneron also does not respond to Amgen's points that Praluent®'s status as the exclusive PCSK9 inhibitor on the formulary of "the second largest PBM," CVS, shows the implausibility of any assertion (though Regeneron makes none) of a likely exit from the market. Br. at 20. Nor does it adequately respond to Amgen's argument that Leqvio® could compete on price. *Id.*

Finally, Regeneron cites *3Shape* for the proposition that it need only allege "'that the effect of the discounts is to foreclose portions of the market to a potential competitor who does not manufacture an equally diverse group of products and who therefore cannot make a comparable offer.'" Opp. at 18. But this standard, which is from *LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003), "is limited to cases in which a single product producer is excluded through a bundled rebate . . . offered by a [multi-product] producer . . . which conditions the rebates on purchases across multiple different product lines." *ZF Meritor*, 696 F.3d at 274 n.11. The plaintiff in *3Shape* sold only one product. 2020 WL 2559777, at *8. Regeneron's judicially noticeable SEC filings, by contrast, show that it markets at least nine other drugs, including Dupixent®. Br. at 20 n.21.[3] The

---

[3] That Regeneron "does not control" Dupixent® marketing, Opp. at 16 n.11, is not in the Complaint and is no excuse for its pleading failures because Regeneron could still work with its marketing partner to offer a competitive bundle.

9

standard from *LePage's*, which Regeneron fails to meet in any event, is inapposite. Regeneron must instead satisfy the price-cost test, and show likelihood of recoupment, which it cannot do. *See* Br. at 19–20; *cf. also 3Shape*, 2020 WL 2559777, at *8 ("I am highly skeptical [of a pleading burden that] does not require any consideration of the size of the discount.").

### III. Regeneron Has Not Adequately Alleged That Amgen Conditions Rebates On A Monopoly Drug To Exclude Regeneron's Praluent®.

#### A. Amgen's Contracts Show That It Does Not Condition Otezla® Rebates on Repatha® Formulary Coverage.

Amgen showed in its opening brief that for the threat of a lost bundled rebate to coerce a customer into purchasing the bundle, the rebate must be on a monopoly product because in that circumstance, if the customer does not purchase the bundle, it forfeits a rebate on a product that, due to the absence of substitutes, it still must buy from the defendant. *See* Br. at 21–22 (collecting cases). As Amgen's agreements with ESI Commercial and Optum Commercial demonstrate, Amgen *does not* condition Otezla® rebates on Repatha® formulary coverage. *Id.* at 7 & n.5. Still, Regeneron argues without legal support that whether a "rebate is not an 'Otezla® rebate' . . . is a distinction without a difference" because "the economic reality is the same: a massive rebate requiring coverage of Enbrel® and Otezla® conditioned on Repatha® exclusivity." Opp. at 14 n.9.

Regeneron is wrong. For Otezla® to be economically coercive, a customer must *lose Otezla® rebates* if it does not cover Repatha® exclusively. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Br. at 7 & n.5. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* at 21–22; *see also, e.g.*, *Shire US, Inc. v. Allergan, Inc.*, 375 F. Supp. 3d 538, 557 (D.N.J. 2019) (evaluating coercion based solely on the glaucoma drugs on which Allergan had allegedly offered the bundled rebates).[4]

---

[4] Amgen does not "concede[] Otezla®'s monopoly power." Opp. at 3. It disputes it. Regardless, Otezla®'s supposed market power is irrelevant given the absence of bundled rebates on it.

10

### B. Regeneron Fails to Allege That Enbrel® Has Monopoly or Market Power.

Regeneron has not plausibly alleged that Enbrel® has monopoly or market power. Br. at 22–24. Regeneron argues in opposition that a plaintiff need not always allege market share. *See* Opp. at 20–21. But market share is considered "the most significant factor" in the analysis. *SEI Global Servs., Inc. v. SS&C Advent*, 496 F. Supp. 3d 883, 894 (E.D. Pa. 2020). "While other factors are also relevant, they are typically considered alongside facts concerning market share, not in lieu of such facts." *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, 2006 WL 543155, at *4 (D.N.J. Mar. 3, 2006). Here, Regeneron asserts no allegations regarding the other factors relevant to market power, which indicates a lack of it. *See* Br. at 22–23. Further, Regeneron's claim regarding barriers to entry is irrelevant because Humira® is already on the market. Opp. at 20.

Regeneron's last-ditch argument is that perhaps Enbrel® and Humira® *both* have market power. Opp. at 21. That makes no sense in the context of this case. For rebates on Enbrel® to compel customers to cover Repatha® exclusively, Enbrel® would need to be a "must-have" drug—otherwise the customer could simply drop Enbrel® and avoid the impact of losing the rebates. *See Shire*, 375 F. Supp. 3d at 557; *SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1065 (3d Cir. 1978) (bundling claim involves allegation that competitive product is bundled with a "product[] on which [the defendant] faced *no competition*" (emphases added)). Humira®'s prominence, and the fact that Enbrel® is not even the "preferred" treatment of major customers like Optum, shows Enbrel® is not a "must have" medicine that could coerce exclusivity. Br. at 17. Even putting aside Otezla®, the Court should dismiss all claims based on alleged bundled rebates for Enbrel®.

### IV. Regeneron's State Law Claims Are Inadequate.

Regeneron does not dispute its failure to "allege, in other than conclusory terms, [Amgen's] sales price, costs in the product, and costs of doing business," as the UPA squarely requires. *Fisherman's Wharf Bay Cruise Corp. v. Super. Ct. of San Francisco*, 114 Cal. App. 4th 309, 322

(2003); *see* Br. at 25. It instead contends its UPA claim should survive so long as its "method of calculating costs . . . is not 'arbitrary or irrational.'" Opp. at 25. But Regeneron's method for calculating costs is irrational for the reasons stated above, and because it includes nonexistent Otezla® rebates. *See supra* § III.A. Regeneron's UCL claim fails for the same reason, and because it duplicates Regeneron's failed antitrust claims. Br. at 25. Regeneron does not try to rebut Amgen's arguments on tortious interference, and its novel and unsupported assertion that a UPA violation is somehow a "predicate" for such a claim has no legal basis. Opp. at 25. Regardless, Regeneron's UPA claim fails for the reasons noted above, so even under Regeneron's logic, it cannot support a tortious interference claim. Finally, even if the Cartwright Act is not coextensive with the Sherman Act in every case, it still requires that for the type of anticompetitive conduct alleged here, the seller "use its market power in one market to force or coerce a buyer to purchase its product or service in a distinct market in which the seller does not have such market power or to refrain from buying from the seller's competitor." *UAS Mgmt., Inc. v. Master Misericordiae Hosp.*, 169 Cal. App. 4th 357, 368–69 (2008). Regeneron's failure to allege a coercive bundled rebate, or adequate foreclosure and duration, is thus fatal to its Cartwright Act claim. Br. at 25.[5]

## CONCLUSION

Amgen respectfully requests that the Court dismiss the Complaint without leave to amend.

---

[5] The Court should deny Regeneron's perfunctory request for leave to amend in a footnote at the end of its brief. Regeneron could have amended the Complaint after Amgen submitted its contracts, yet chose not to. Fed. R. Civ. P. 15(a)(1)(B). Having instead doubled down, it is fair to hold Regeneron to the Complaint it chose. Moreover, the "long-standing amendment rule" in the Third Circuit that "failure to submit a draft amended complaint is fatal to a request for leave to amend" dooms Regeneron's request, which also fails because any amendment would be futile. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Baker v. Hartford Underwriters Ins. Co.*, 490 Fed. Appx. 467, 469–70 (3d Cir. 2012) (denying footnote request to amend for failure to submit a draft amended complaint). Regeneron's citation to *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008), a civil rights case, is inapposite because the rule in that case does not apply "outside of civil rights cases." *Fletcher-Harlee*, 482 F.3d at 252.

|  |  |
|---|---|
|  | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|  | */s/ Melanie K. Sharp* |
|  | Melanie K. Sharp (No. 2501)<br>James L. Higgins (No. 5021)<br>Taylor E. Hallowell (No. 6815)<br>1000 North King Street<br>Wilmington, DE  19801<br>(302) 571-6600<br>msharp@ycst.com<br>jhiggins@ycst.com<br>thallowell@ycst.com |
|  | GIBSON, DUNN & CRUTCHER LLP<br>Eric J. Stock<br>Ben A. Sherwood<br>200 Park Avenue<br>New York, NY  10166-0193<br>(212) 351-4000 |
|  | Stephen Weissman<br>Richard G. Parker<br>1050 Connecticut Avenue, N.W.<br>Washington, DC  20036-5306<br>(202) 955-8500 |
|  | Ashley E. Johnson<br>2001 Ross Avenue, Suite 2100<br>Dallas, TX  75201<br>(214) 698-3100 |
| Dated:  October 19, 2022 | *Attorneys for Amgen Inc.* |

13

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on October 19, 2022, I caused to be electronically filed a true and correct copy of Reply Brief of Defendant Amgen Inc. in Support of Its Motion to Dismiss with the Clerk of the Court using CM/ECF, which will send notification to the following counsel of record:

David E. Wilks
Scott B. Czerwonka
Wilks Law LLC
4250 Lancaster Pike Suite 200
Wilmington, DE  19805
dwilks@wilks.law
sczerwonka@wilks.law

I further certify that on October 19, 2022, I caused a copy of the foregoing document to be served on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL:**

Elizabeth Stotland Weiswasser
Eric S. Hochstadt
John Z. Ren
Robert Niles-Weed
Gabrielle H. Kanter
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119
Elizabeth.weiswasser@weil.com
Eric.hochstadt@weil.com
John.ren@weil.com
Robert.niles-weed@weil.com
Gabrielle.kanter@weil.com

Michael R. Moiseyev
Priyata Y. Patel
Weil, Gotshal & Manges LLP
2001 M. Street , NW
Washington, DC  20036
(202) 682-7000
Michael.moiseyev@weil.com
Priyata.patel@weil.com

            */s/ Melanie K. Sharp*
           Melanie K. Sharp (No. 2501)

29821117.1