IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REGENERON PHARMACEUTICALS, INC.<br><br>               Plaintiff,<br><br>   v.<br><br>AMGEN INC.<br><br>               Defendant. | C.A. No.: 1:22-cv-00697-RGA-JLH<br><br>JURY TRIAL DEMANDED |

**JOINT LETTER SETTING FORTH THE PARTIES' RESPECTIVE POSITIONS
REGARDING PROPOSED SCHEDULING ORDER**

Dated: March 13, 2023

Plaintiff Regeneron Pharmaceuticals, Inc. ("Regeneron") and Defendant Amgen Inc. ("Amgen") hereby submit a proposed Scheduling Order and, with respect to areas of disagreement, the parties' respective positions below.

*Regeneron's Position*

Regeneron filed this antitrust case almost a year ago alleging that "it is being driven out of the market as a result of Amgen's conduct." D.I. 49 at 18. Now that the Court has denied Amgen's stay request on the ground that "[t]he potential prejudice to Regeneron by delaying the ultimate resolution of this case is significant," this case should move forward promptly. *Id*. To that end, Regeneron served its initial discovery requests on Amgen at the Rule 26(f) conference.

Regeneron has proposed a case schedule that is typical for this District. From start to finish, fact discovery should take six months. Amgen cannot fairly complain about this timing. When Amgen was the plaintiff in this Court suing Regeneron to prevent Praluent® from competing with Repatha®, Amgen sought and obtained a schedule with less time for fact discovery. *See* Scheduling Order, *Amgen Inc. v. Sanofi et al.*, No. 14-1317-SLR-RGA (D. Del. Apr. 21, 2015). Amgen's further complaints about costs and an inability to review documents ring hollow as (i) Amgen has spent millions to enjoin Praluent®, (ii) the parties are represented by large law firms, and (iii) Amgen is doing a massive document review for its $27B merger with Horizon Therapeutics.

By contrast, Amgen has proposed a schedule that is not intended to adjudicate this case fairly or promptly as required by antitrust law or the Rules. Amgen's alternative schedule deviates from standard practice and expressly builds in further delays and piecemeal motion practice.

For starters, Amgen tries to justify its improper efforts to dribble out discovery by writing that Regeneron also proposed "sequenced production" of documents. But this is a false parallel. Regeneron is justifiably concerned to avoid Amgen doing a "document dump" at the end of document discovery, and accordingly proposed that Amgen produce its PBM contracts at the outset. Given that its Rule 12 motion was premised on these contracts, Amgen can do this easily. Then, solely in an effort to respond to Amgen's concerns stated at the Rule 26(f) conference over competition-related discovery, Regeneron proposed a deadline to produce *final* (i) brand/marketing/strategy-planning documents, and (ii) profit and loss statements for the three Amgen products in its unlawful bundle—Otezla®, Enbrel®, and Repatha®. But this second deadline was purely offered as an accommodation and can be removed, if the Court so chooses. And the "third" date Amgen relies upon to create the false impression of a "sequenced production" is not a "sequence" at all, but simply the deadline for completion of document production.

Beyond mischaracterizing Regeneron's schedule, as the Court has already learned from prior briefing and argument, Amgen aims to avoid the Court's scrutiny of its conduct. Amgen's proposal continues that strategy, in disregard of the letter and spirit of this Court's February 10, 2023 Order. Amgen hopes to truncate discovery and then renew its unsuccessful motions to stay and to dismiss, recast as a partial summary judgment motion on a cherry-picked record. The Court has rejected that idea already, and Regeneron submits that engaging in the exercise again would be wasteful, dilatory and prejudicial to Regeneron and the patients who depend on Praluent®.

*First*, Amgen does not intend to produce anything more than a few contracts before the Supreme Court decision in the patent case. The "substantial completion…of custodial documents relating to contract negotiations" under Amgen's schedule is not until July 28, 2023. That is, Amgen seeks to do as little as possible before it renews its baseless request for a stay of the antitrust case if Amgen prevails at the Supreme Court. That violates the letter and spirit of the Court's Order denying Amgen's motion for a stay and directing the parties to proceed with discovery.

*Second*, under the guise of "sequencing," Amgen proposes bifurcated discovery with the first phase of document production and depositions artificially limited to "contract negotiations." But Regeneron should not be forced to litigate its antitrust case on Amgen's terms. Amgen acts as if it is the first defendant to dispute a lawsuit's allegations and therefore it is entitled to dictate how the case proceeds. But this Court already ruled that: "Regeneron's claims are based upon its plausible allegation that Amgen agreed with PBMs that Repatha® would get exclusive formulary position in exchange for rebates on other drugs; such an agreement could have been memorialized in a document not presently before the Court, or it might not have been written down at all." D.I. 49 at 9. Regeneron is entitled to demonstrate its claims based on a full record, not a partial one dictated by Amgen. This record must include all relevant discovery, not just the areas Amgen would permit, and must include, among other categories, Amgen's competition, financial, and strategy documents for Otezla®, Enbrel®, and Repatha®. Underscoring the unfairness in its proposal, last week Amgen served broad discovery on *Regeneron*—on *all* relevant topics. To defend the case, Amgen apparently believes it is entitled to full discovery from Regeneron. But Amgen seeks to shield its own discovery to hinder Regeneron's ability to prosecute the case. Indeed, Amgen proposes a cabined review of a few hand-picked "contract" custodians to search for documents that Amgen says are responsive, *i.e.*, an incomplete set of negotiation documents. Amgen's bifurcated approach would involve depositions of less than five witnesses, who would be subjected to additional depositions after the contract discovery. This proposal is contrary to the Rules and Regeneron's right to obtain all relevant discovery. It is also unsupported by any Rule or local practice. Regeneron's proposal allows for depositions to occur efficiently, at one time. And, contrary to Amgen's statement, Regeneron's schedule allows for depositions to begin at any point.

*Third*, Amgen wants to short-circuit discovery so that it "may file summary judgment or other motions arising out of discovery relating to contracts and contract negotiations." This is plainly an effort to get a do-over on their motion to dismiss. But in recommending denial of Amgen's Rule 12 motion based on Regeneron's plausible exclusive dealing and bundling claims, the Court already noted that Amgen's defenses involve "factual disputes." D.I. 13, 15. The Court will thus need a full evidentiary record to scrutinize Amgen's commercial practices, as required by substantive antitrust law. *See, e.g., Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1007 (3d Cir. 1994) ("plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each."); *3Shape Trios A/S v. Align Tech., Inc.*, 2020 WL 6938054, *2 (D. Del. Nov. 25, 2020) (allowing that "factual details required for quantitative and qualitative analyses of the degree of market foreclosure" be developed on a full record) (collecting cases). Additionally, Amgen's approach is improper as being precisely "the type of piecemeal adjudication disfavored by federal courts." *Boyer v. Taylor*, Civ. No. 06-694, 2012 WL 1132786, at *5 (D. Del. Mar. 30, 2012).

In sum, Regeneron is deeply concerned that Amgen has put forward a schedule to obfuscate and avoid full scrutiny of its commercial practices involving Otezla®, Enbrel®, and Repatha®.

Regeneron respectfully submits that the schedule it has proposed ensures that this case proceeds properly so that the Court can fairly adjudicate Amgen's conduct on a full record.

*Amgen's Position*

Regeneron's assumptions and misrepresentations about Amgen's position are not productive. The question is the most efficient way to litigate this case. Regeneron's complaints about Amgen's sequenced discovery proposal ring hollow because Regeneron's own proposal, just like Amgen's, involves a three-step sequenced production. Though Regeneron backpedals, saying this is just an "accommodation," it is nonetheless what they propose. Unlike Regeneron's, Amgen's proposal offers significant efficiencies and an opportunity to streamline the case. Amgen's proposed schedule provides adequate time for the large document productions expected in this case and remains expeditious. Regeneron cites the discovery schedule in the parties' patent case, but that was an *IP* case involving only *one product*. Here, Regeneron seeks *antitrust* discovery relating to *three product markets*. Antitrust cases involve uniquely burdensome discovery. Regeneron's proposed schedule combines unrealistic deadlines with an unjustified attempt to micromanage Amgen's production. It should be rejected.

*The Parties' Conflicting Sequenced Document Production Proposals*

Both Regeneron and Amgen propose a three-step sequenced production and agree on the first step (contracts) and the third (all documents). At the second step, Regeneron proposes production of "financial and strategy" documents. But that achieves no efficiencies at all because, under Regeneron's schedule, no depositions or motions occur until *all* documents are produced. So this sequencing is just an attempt to micromanage Amgen's rolling production.

By contrast, Amgen's proposal has a purpose and offers actual efficiencies. It is not "bifurcation" nor is it one-sided—both parties will produce responsive documents on *all* issues by each deadline. Amgen would accept Regeneron's proposal for early contract production, and at the second step the parties will produce documents on all responsive topics from agreed upon custodians involved in negotiating the contracts. This would provide an opportunity for potential (but not required) early motions that could greatly streamline the case, reduce the burden on the Court, and minimize unnecessary and unwarranted discovery costs for both sides.

It will be expensive and burdensome for Amgen to produce documents relating to the *three businesses* Regeneron has put at issue: Repatha®, Enbrel®, and Otezla®. As the Court is aware, Amgen contends that the ESI Commercial and Optum Commercial contracts relied upon in Regeneron's complaint did *not* contain any bundled discounts for Otezla®. If that is proven correct, then the sizeable discovery relating to Otezla® brand plans, marketing, pricing, and competition is entirely irrelevant. Avoiding (or at least limiting) that discovery—if justified—would save significant effort and expense. In addition, Amgen contends the Optum Commercial contract did *not* provide Otezla® or Enbrel® rebates in return for preferencing Repatha® over Praluent®. If so, then summary judgment for Amgen will be warranted, at least for lack of substantial foreclosure given that Regeneron attributes only 15% foreclosure to the ESI contract.

Regeneron complains about "piecemeal" litigation, but there is nothing "piecemeal" or "cherry picked" about addressing threshold issues early in the case. If there were no Otezla®

3

bundled rebates, then much of the discovery Regeneron demands will have been extraordinarily wasteful. Amgen's proposal provides an opportunity (but not a requirement) after the second "sequence" of production for early motions that could simplify the case, and a deadline for such motions—and the filing of a summary judgment motion would not stay *any* deadlines, absent a court order. Amgen's schedule also allows (but does not require) early depositions of the contract negotiators. And because a party taking such a deposition would have all the deponent's documents, there is no reason to think these individuals would need to be deposed again.

Regeneron's proposal wholly ignores that the high cost of antitrust discovery requires that "basic deficienc[ies]" in a plaintiff's case "should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citations/quotes omitted) (emphasis added). *See also*, *Int'l Constr. Prods. LLC v. Caterpillar Inc.*, 2016 WL 264909, at *6 (D. Del. Jan. 21, 2016) ("[T]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint.") (quotations omitted).

While this Court determined it could not decide on the pleadings whether Amgen's contracts revealed a "basic deficiency" in Regeneron's case, there is no reason it must wait to do so until millions of dollars have been spent on discovery and experts that are entirely irrelevant to the outcome. The Court held that "Regeneron's *core* allegation is that Amgen gave PBMs big rebates on Otezla® and Enbrel® in return for Praluent® being excluded (or getting less preferable placement) on the formularies." D.I. 49 at 8 (emphasis added). Amgen's proposed sequencing allows the possibility to test this foundational allegation earlier—i.e., "at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558.

*Unreasonable Time Periods for Production*

Regeneron's proposed *three month* period for all document production is unreasonable. Unfortunately, "antitrust specific discovery" can "be voluminous, time-consuming, and expensive." *Eagle Pharms., Inc. v. Eli Lilly & Co.*, 2018 WL 6201704, at *3 (D. Del. Nov. 27, 2018). This is not a patent case involving one product (nor one where a party is prepared to prove a threat of immediate, irreparable harm). For example, Regeneron's RFPs 1, 6, and 7 seek "*All Documents and Communications relating to competition for Repatha®,*" *Otezla®, and Enbrel®*, requiring Amgen to reach across three businesses to produce a massive set of materials.

The dates Regeneron proposes for *interim* production deadlines are also not reasonable. And contrary to Regeneron's suggestion, Amgen's dates are tied to the time actually required for production—not the Supreme Court decision. Regeneron proposes the production of contracts by March 30, but to produce the contracts, Amgen needs to collect them, review for confidentiality, and, for most, provide notice to counterparties and the opportunity to object. Likewise, Regeneron's deadline for "financial/strategy" documents is not an "accommodation"; it is unduly burdensome on Amgen, serves no purpose and is arbitrary. Regeneron has no basis for contending that Amgen plans to unduly delay its production. If the Court does not adopt Amgen's proposal, then the Court should simply order a reasonable deadline for substantial production of all documents, which would be at least eight months from now.

| WILKS LAW, LLC | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|---|---|
| */s/ David E. Wilks* | */s/ Melanie K. Sharp* |
| David E. Wilks (DE Bar No. 2793)<br>Scott B. Czerwonka (DE Bar No. 4844)<br>4250 Lancaster Pike Suite 200<br>Wilmington, DE 19805<br>Telephone: (302) 225-0850<br>Fax: (302) 225-0851 | Melanie K. Sharp (DE Bar No. 2501)<br>James L. Higgins (DE Bar No. 5021)<br>Taylor E. Hallowell (DE Bar No. 6815)<br>1000 North King Street<br>Wilmington, DE 19801<br>Telephone: (302)571-6600 |
| WEIL, GOTSHAL & MANGES LLP | GIBSON, DUNN & CRUTCHER LLP |
| Jonathan D. Polkes (admitted *pro hac vice*)<br>Elizabeth Stotland Weiswasser (admitted *pro hac vice*)<br>Eric S. Hochstadt (admitted *pro hac vice*)<br>Adam B. Banks (admitted *pro hac vice*)<br>Jessica L. Falk (admitted *pro hac vice*)<br>Robert Niles-Weed (admitted *pro hac vice*)<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Telephone: (212) 310-8000<br>Fax: (212) 310-8007 | Eric J. Stock (admitted *pro hac vice*)<br>Ben A. Sherwood (admitted *pro hac vice*)<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>Telephone: (212) 351-4000<br><br>Stephen Weissman (admitted *pro hac vice*)<br>Richard G. Parker (admitted *pro hac vice*)<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Ave, NW<br>Washington, D.C. 20036-5306<br>Telephone: (202) 955-8500 |
| Michael R. Moiseyev (admitted *pro hac vice*)<br>Priyata Y. Patel (admitted *pro hac vice*)<br>WEIL, GOTSHAL & MANGES LLP<br>2001 M Street, NW<br>Washington, D.C. 20036<br>Telephone: (202) 682-7000<br>Fax: (202) 857-0940 | Ashley E. Johnson (admitted *pro hac vice*)<br>GIBSON, DUNN & CRUTCHER LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, TX 75201<br>Telephone: (214) 698-3100 |
| *Attorneys for Regeneron Pharmaceuticals, Inc.* | *Attorneys for Amgen, Inc.* |