IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

REGENERON PHARMACEUTICALS, INC.,  :
                                                       :
        Plaintiff,                    :
                                                       :
     v.                                 :      Civil Action No. 22-697-RGA
                                                       :
AMGEN, INC.,                     :
                                                       :
        Defendant.              :

**MEMORANDUM ORDER**

Plaintiff filed an antitrust suit against Amgen. It has eleven counts. Amgen filed a motion to dismiss. (D.I. 17). I referred the motion to a Magistrate Judge, who wrote a Report and Recommendation recommending that I deny the motion. (D.I. 49). Amgen objected on three bases. (D.I. 54). I presume familiarity with the Magistrate Judge's Report.

I review the objections *de novo*.

I completely agree with the Magistrate Judge that Amgen's purported contracts with third-party payors are not the sort of extrinsic evidence that I can consider on a motion to dismiss. Thus, Amgen's third objection (D.I. 54 at 10) is **OVERRULED**.

Plaintiff alleges that Repatha had monopoly power. (D.I. 1, ¶ 110). Amgen does not challenge the plausibility of that allegation. Plaintiff alleges that Otezla has monopoly power (*id.*, ¶ 113) and that Enbrel has market power (*id.*, ¶¶ 122-23).

Amgen challenges the plausibility of the Otezla allegations based on the contracts. (D.I. 54 at 1-2). Since I do not think Amgen can rely upon the contracts, the Otezla challenge is **OVERRULED**.

Amgen challenges the plausibility of the Enbrel allegations on the basis that Plaintiff does not plausibly allege that Enbrel has a high market share or any other indicia of market power. (*Id.* at 1, 7-10). It is true that Plaintiff does not plead that Enbrel has monopoly power. The Magistrate Judge's report does not address Enbrel's market power other than to say that there are factual disputes. (D.I. 49 at 13).[1] The complaint makes three pages of allegations about Enbrel. (D.I. 1 at 56-58). These include allegations about the financial performance of Enbrel from about 2002 to 2020, during which Enbrel's price increased by a factor of about 5.5 and its net U.S. revenue increased by a factor of about 4. (*Id.* at 58). The complaint acknowledges competition from Humira. I **OVERRULE** Amgen's objections. First, the Complaint alleges the bundling includes both Otezla and Enbrel. I think it would be wrong to treat them as isolated allegations. Second, there are allegations that support the market power assertions about Enbrel, including the significant upward trends over time in both pricing and net revenues, and the overall size of Amgen's net revenues from sales of Enbrel.

Amgen's main argument, on the foreclosure issue (D.I. 54 at 2-7), is not all that suitable for a motion to dismiss. Amgen mostly relies upon cases decided after summary judgment or a trial. (D.I. 54 at 2-3, 4, 6-7).[2] The allegations of foreclosure in this case are clearly at the low

---

[1] Amgen raises factual disputes. It requested that "the Court need not turn a blind eye to the ample public evidence [about competitors and competition in the market]." (D.I. 18 at 24).

[2] *Microsoft* (trial); *Kidd* (summary judgment); *ZF Meritor* (trial); *Jefferson Parish* (trial); *B&H Medical* (summary judgment); *Stop & Shop* (summary judgment); *Barry Wright* (trial); *Balaklaw* (summary judgment); *Eisai* (summary judgment); *Brooke Group* (trial). The only cases actually involving a motion to dismiss are three district court cases; two of them (*Pro Search & PNY Techs*) both turned on the length of the contracts, not on the percentage of the market foreclosed, and involved dismissals without prejudice; the third (*International Construction Products*) involved conclusory allegations of foreclosure. Amgen's objections consistently overstate the value of the cases on the issue before the court. For example, *Brooke Group* is described as "an antitrust plaintiff challenging low prices must plead that it 'would *likely* succumb' and exit [the market]." (D.I. 54 at 7). But *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509

end in terms of percentages, but the allegations have to be judged in the context of the entire complaint. "It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive. A district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 588 (2007) (cleaned up). Plaintiff has pleaded its case with specificity. The foreclosure percentages are not determinative at the pleading stage. I **OVERRULE** Amgen's argument on that point.

The Objections (D.I. 54) are **OVERRULED**. The Report and Recommendation (D.I. 49) is **ADOPTED**. The motion to dismiss (D.I. 17) is **DENIED**. IT IS SO ORDERED this 21st day of March 2023.

_____
United States District Judge

---

U.S. 209, 225 (1993) is not a case about pleading. In discussing whether a defendant's below-cost pricing is capable of driving a competitor from the market, the Supreme Court stated, "The inquiry is whether, given the aggregate losses caused by the below-cost pricing, the intended target would likely succumb." *Id.* An "inquiry" does not translate into a pleading requirement.