## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

REGENERON PHARMACEUTICALS, INC.,

        Plaintiff,

        v.

AMGEN INC.,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

C. A. No.: Case #1:22-cv-00697-RGA-JLH

### STIPULATED AND PROPOSED ORDER REGARDING
### DOCUMENT PRODUCTION PROTOCOL

Pursuant to Paragraph 1 of the Default Standard for Discovery, Plaintiff Regeneron Pharmaceuticals, Inc. ("Regeneron") and Defendant Amgen Inc. ("Amgen") hereby stipulate regarding the conduct, parameters and timing of document production in this matter as follows:

**A.**  **DEFINITIONS**

The following definitions shall apply for purposes of this agreement.

1. "The Litigation" refers to the above-captioned case, Regeneron Pharmaceuticals, Inc. v. Amgen Inc., Case #1:22-cv-00697-RGA-JLH.

2. "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

3. "Paper Discovery" means any Document or thing discoverable under Fed. R. Civ. P. 26(b)(l) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

4. "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes ESI, Paper Discovery.

5. "Email" means a system or network for transmitting messages electronically that will send, store, process and receive information as between computers.

6.      "Format" means the internal structure of a file, which defines the way it is stored and used.

7.      "Native Format" means the format of ESI in the application in which such ESI was originally created.

8.      "Party" or "Parties" means Plaintiff Regeneron Pharmaceuticals, Inc. and Defendant Amgen Inc.

9.      "Plaintiff" refers to Plaintiff Regeneron Pharmaceuticals, Inc.

10.     "Defendant" refers to Defendant Amgen Inc.

11.     "Producing Party" means a Party that produces Documents.

12.     "Receiving Party" means a Party to whom Documents are produced.

13.     "Requesting Party" means a Party that requests Documents.

14.     "Responsive Document" means any Document produced by a Party in the Litigation, including any Document that is responsive to any Document request served on the Producing Party in the Litigation that the Producing Party has agreed to produce, or that the Producing Party has been ordered to produce by the Court.

15.     "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

16.     "Production Volume" means a unique alpha-numeric volume name representing a range of Documents (i.e., batch) sent to the Receiving Party by the Producing Party. The Production Volume is named consecutively beginning with "[Designation Indicating Party]001" and continuing sequentially until all Documents have been produced.

17.     "Custodial ESI" refers to ESI in the custody of an individual that a Producing Party has designated as a document custodian.

18.     "Non-custodial ESI" refers to a system or container that stores ESI, but over which

2

an individual custodian does not organize, manage, or maintain the ESI in the system or container (e.g., enterprise system or database).

**B.    SCOPE**

1.    The procedures and protocols set forth in this Document Production Protocol shall govern the production of Responsive Documents between the Parties in the Litigation. This Document Production Protocol incorporates the provisions in the Default Standard for Discovery of this jurisdiction subject to any variations agreed upon by written stipulation of the Parties. Any practice or procedure set forth herein may be varied by written stipulation of the Parties and submitted to the Court for signing. By agreeing to this Protocol, the Parties do not admit that the production of ESI is necessary or appropriate for any given Document request. The Parties reserve all rights to make objections when responding to Document requests.

2.    Nothing in this Document Production Protocol establishes any agreement as to either the temporal or subject matter scope of discovery in the Litigation. Nothing in this Protocol creates an obligation by any Party to produce ESI on back-up tapes or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium.

3.    Absent a showing of good cause by a Party, activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery.

4.    Absent a showing of good cause by a Party, the categories of ESI identified below need not be preserved:

a.    Deleted, slack, fragmented, or other data only accessible by forensics.

b.    Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c.    On-line access data such as temporary internet files, history, cache, cookies, and the like.

d.      Back-up data that are substantially duplicative of data that are more accessible elsewhere.

e.      Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

f.      Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

g.      Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

h.      Logs of calls made from mobile devices.

i.      Server, system, or network logs.

j.      Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

k.      Data remaining from systems no longer in use that is unintelligible on the systems in use.

l.      Storage media created for disaster recovery.

m.      Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5.      On-site inspection shall not be permitted absent a demonstration by the Requesting Party of specific need and good cause.

6.      The Parties shall promptly meet and confer as frequently as appropriate to negotiate in good faith to resolve any disputes that arise under this Document Production Protocol. Where consent or agreement is required, it shall not be withheld unreasonably. In the event the Parties

4

cannot promptly reach agreement on a disputed matter, the Parties may submit the matter to the District Court Judge or designated Magistrate for the Litigation.

C.   **COST CONTAINMENT**

    1.   **Objective**: The procedures in this Order pertaining to production of ESI are subject to the development of reasonable and appropriate strategies to minimize the cost and burden that may be associated with production of ESI.

    2.   **Keyword Searches**: For the production of Custodial ESI, the Parties agree to conduct Keyword Searches using search terms that have been reasonably calculated in good faith to retrieve responsive ESI. The Parties agree to exchange their respective lists of search terms for Custodial ESI and meet and confer in good faith as necessary to resolve any disputes that may arise regarding the use of search terms or any other deficiencies in a Party's electronic document production, following the guidance of this jurisdiction's Default Standard for Discovery.

    3.   **Technology Assisted Review**: The Parties may agree to the use of Predictive Coding, Technology Assisted Review ("TAR"), or computer-assisted learning for each Party's electronic document productions. The Producing Party will disclose to the Receiving Party if it intends to use TAR to filter out or exclude non-responsive documents.  The Parties agree to meet and confer at that time to negotiate a suitable TAR protocol that includes a validation process.  A Receiving Party may request, among other things, the following information about a Producing Party's use of TAR or similar advanced analytics limited to the following:  (1) the custodians and data sources against which TAR or advanced analytics will be run; (2) the TAR or advanced analytics tool being used and vendor; and (3) the measure(s) used to validate the results of the TAR methodology or similar advanced analytics. The Receiving Party may raise any objections to the Producing Party's use of TAR to with the District Court Judge, or Magistrate if one is appointed, for the Litigation.

4.      **Email Threading**: Where multiple email messages are part of a single "thread," a Party is only required to produce the most inclusive message for which no claim of privilege is made, and need not produce earlier, less inclusive email messages that are fully contained, including attachments, within the most inclusive email message for which no claim of privilege is made. For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be produced; if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced.

D.      **PRODUCTION FORMAT**

1.      **ESI Production Format**: Unless otherwise specified herein, a Producing Party shall produce electronic documents in black-and-white, single page, 300 DPI, Group IV* tagged image file format ("TIFF") images with corresponding extracted full text. All productions will include these additional specifications:

a.      A load file for images;

b.      A delimited load file (.dat), or any equivalent format thereof that the Parties find mutually agreeable, containing a field with the full path and filename to Native Files produced and the metadata fields identified in this Paragraph D.1 (for ESI) (unless the filename is redacted);

c.      Document level .txt files, or any equivalent format thereof that the Parties find mutually agreeable, for all native documents containing extracted full text; provided, however, that OCR text will be provided if extracted text is not available (in which case the Parties shall meet and confer regarding the reason extracted text is not available) or if the document has been redacted pursuant to this protocol or the Protective Order that the Court

6

will enter in This Litigation; and

     d.     Bates number branding and appropriate Confidentiality designations (if any) on the face of the image.

     e.     Slipsheets may be used as placeholders for any family member documents or email attachments that are not responsive, which should indicate "nonresponsive attachment not produced" or language to that effect.

2.     **Production of Native Format ESI**:

     a.     A Producing Party shall produce PowerPoint presentations, Excel spreadsheets, audio files, and video files in their Native Format. For PowerPoint presentations and Excel spreadsheets with redactions, the Producing Party shall either: (1) produce them as TIFF images, but shall ensure that the images are legible, and the Parties shall meet and confer with regard to any issues with how presentations and spreadsheets with redactions are compiled (e.g., cell numbers and headers); or (2) produce them as Redacted Native PowerPoint or Excel files.

     b.     If production in Native Format is necessary to decipher the meaning, context, or content of a document produced in TIFF, the Producing Party will honor reasonable requests for either the production of the original document for inspection and copying or production of the document in Native Format.

     c.     To the extent it exists and is available, the metadata fields listed in Schedule A will be produced with each Native File. The Native Format document shall be renamed with a Bates number. For each document whose Native Format is a multimedia (video) file, a TIFF placeholder shall be produced in addition to the Native File.

3.     **Production Load File**: The Producing Party shall provide a Production Load File to accompany the TIFF images that are produced to facilitate the use of the produced images by a

document management or litigation support system.

      a.      Production Load Files shall indicate document breaks and contain the parent/child (Email/Attachment) relationships of documents, when possible.

      b.      For all documents produced, regardless of whether produced in TIFF image or Native Format, the metadata fields listed in Schedule A will be provided in the Production Load File for each document to the extent that such information is available at the time of collection and processing.

      c.      To the extent that a document is produced in redacted form, any redactions shall be clearly indicated on the face of the document, and the Production Load File accompanying that document's production should indicate, for each redacted document, that there is a redaction. Where a responsive document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the document. The production of a document in a redacted form does not affect the Producing Party's obligation to properly document and substantiate the assertion of privilege over the content on a privilege log. Except as provided above in Paragraph D.2, documents that are to be produced in Native Format, but that require redactions, may be produced as TIFF images (with extracted text) with the relevant portions redacted, or if a TIFF image production is not technically feasible, the Producing Party may produce a copy of the Native File with the relevant portions replaced with "[REDACTED]" or a similar mark. If modification of a Native File is required for redaction purposes, metadata information associated with that file should remain unchanged unless it also requires redaction.

4.      **<u>Production of Paper Discovery</u>**: Paper Discovery will be produced in electronic form. The data load file shall contain the metadata associated with each Production Field specified

in Schedule B. Paper Discovery produced in electronic form will be rendered text searchable via OCR or other means by the Producing Party. If a document that was originally generated by a software application (e.g., Microsoft Word or Microsoft Outlook) is collected from a custodian in hard copy form, the Producing Party has no obligation to locate and produce the electronic file from which the hard copy was created. For Paper Discovery found in file folders and other similar containers that have labels or other identifying information, such file folder and label shall be scanned.

5.    **Appearance and Content**: Subject to any necessary redaction, each Document's TIFF image file shall contain the same information and same physical representation as the Document did in its original format, whether paper or electronic, consistent with the processing specifications set forth in Paragraph E. If a produced Document presents imaging or formatting problems that the Producing Party was not able to resolve at the time of production, the Receiving Party, upon discovery, may request a replacement copy from the Producing Party of the problematic Document and such requests shall not be unreasonably denied and shall be promptly satisfied.

6.    **Color**: Documents containing color need not be produced in color. Provided, however, that the Receiving Party may reasonably request production of a Document in color where the production of a Document in black and white renders the Document indecipherable or where the color version of the produced Document renders the Document more comprehensible (e.g., crystal structure data, color-coded technical data, or certain laboratory notebook pages). Color Documents will be produced in .JPEG format.

7.    **Document Numbering and Confidentiality Designation for TIFF Images**: Each page of a Document produced in TIFF file format shall have a legible, unique numeric identifier ("Document Number;" a/k/a Bates number) not less than eight (8) digits electronically "burned"

onto the image at a place on the Document that does not obscure, conceal, or interfere with any information originally appearing on the Document. The Document Number for each Document shall be created so as to identify the Producing Party and the Document Number (e.g., "AMGOOOOOO"). Plaintiff and Defendant shall each have a unique identifying name. The confidentiality designation, if any, should also be electronically "burned" onto the image at a place on the Document that does not obscure, conceal or interfere with any information originally appearing on the Document.

8.      **De-duplication**: To the extent identical copies of Documents (i.e., Documents with identical hash values) appear in the files produced in this case, the Producing Party need only produce one such identical copy for that source. Emails and their attachments shall be treated as a single file for purposes of de-duplication. De-duplication may be done across custodians, provided, however, that the name of each custodian who had the Document being de-duped shall be provided in the "Duplicate Custodian" metadata field, as known at the time of production of that record. The Custodian field shall be supplemented on a timely basis when additional duplicates are identified and not produced. The Parties may de-duplicate stand-alone documents against stand- alone documents and may de-duplicate top-level email documents against top-level email documents using the calculated hash of the native produced file (e.g., MD5 Hash Code or SHA-1). Electronic files will be de-duplicated based upon the calculated hash values for binary file content (e.g., MD5 Hash Code or SHA-1). File contents will only be used for hash value calculation and will not include operating system metadata values.

9.      **Production Media**: The Producing Party shall produce Document images, load files and metadata on hard drives, CDs, DVDs or other mutually agreeable media ("Production Media"), or via secure FTP or other electronic transfer system ("Secure File Transfer"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the

Producing Party, the date of the production of Documents on the Production Media, the Production Volume, and the Document Number Ranges of the Documents in that production (e.g., "Amgen Production March 1, 2010, AMG0000123 - AMG0000456"). To the extent that the Production Media includes any information designated as "CONFIDENTIAL" or any similar type of designation under any Stipulated Protective Order filed with the Court, or other order or agreement, the label on such Production Media shall prominently indicate that the Production Media includes information so designated. Production Media shall include text referencing the case name and number. With each production, the Producing Party shall provide a transmittal letter containing the production volume(s), the production date, and the Bates number range(s) for the applicable production volumes. Further, any replacement Production Media or Secure File Transfer shall cross-reference the original production volume, clearly identify that it is a replacement, and cross-reference the Document number range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media or Secure File Transfers shall be encrypted. If any piece of Production Media is known to have any physical defect, electronic defect, or damaged data, or is infected with any virus or other harmful software of any kind, it should be clearly labeled so that appropriate care can be taken during its examination. Alternatively, a Party may remove any virus or defect before production but must inform any Receiving Party of any such efforts. If any piece of Production Media is unusable by the Receiving Party, the Producing Party must provide a replacement Production Media as soon as reasonably practicable.

10.    **Original Documents**: Nothing in this Document Production Protocol shall eliminate or alter any Party's obligation to retain: (1) Documents in Native Format, including associated metadata, of all ESI produced in the Litigation pursuant to Paragraph D; and (2) original hard copy Documents for all Paper Discovery produced in the Litigation pursuant to Paragraph

11

D.4.

     11.    **Third-Party Software**: To the extent that Documents produced pursuant to this Document Production Protocol cannot be rendered or viewed without the use of proprietary non-commercially available third-party software or software developed by the Parties, the Parties shall meet and confer to minimize any expense or burden associated with the production of such Documents in an acceptable format and review of the Documents by the Receiving Party, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party or the Parties.

     12.    **ESI of Limited Accessibility**: If a Producing Party contends that any responsive ESI, excluding storage media created for disaster recovery and document types not discoverable pursuant to Paragraph B.4, is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Requesting Party with the basis for declining to produce such ESI. The Parties shall negotiate in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the District Court Judge, or Magistrate if one is appointed, for the Litigation, who shall determine what burdens may be imposed upon the Producing or Receiving Parties in order to resolve the dispute, the value of the inaccessible data to the case, and whether or to what extent the costs of such production shall be borne by the Producing or Receiving Parties.

**E.**     **PROCESSING SPECIFICATIONS**

     The Producing Party shall collect and process Documents using reasonable and defensible methods that avoid spoliation of data. The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:

     1.    Tracked changes, author comments, hidden columns and hidden rows shall be

produced "as is" (as maintained by the source in the ordinary course of business). The Parties shall meet and confer in the event that certain comments, such as Microsoft Modern Comments, are identified that cannot be produced "as is."

2. OLE Embedded files shall not be produced and shall not be extracted as separate documents. Embedded objects in presentations (e.g., PowerPoint) shall be produced upon request of the Receiving Party based upon a showing of particularized need on a case-by-case basis, and such requests by the Receiving Party shall not be unreasonably denied by the Producing Party. For purposes of this Document Production Protocol, attachments to Emails are not considered embedded files.

3. Presenter notes will be made visible and PowerPoint files shall be produced in notes view.

4. **Compressed Files**. Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

5. Auto-populated fields, with the exception of auto-populating "page-number" fields, shall be replaced with text indicating the field name. For example, auto-populating "date" fields shall be replaced with the text "DATE" and auto-populating "file path" fields shall be replaced with the text "PATH."

6. To the extent Documents in a foreign language are produced, processing of such Documents shall be Unicode-compliant.

F. <u>**ADDITIONAL ISSUES**</u>

1. <u>**English Language**</u>: To the extent any Document exists in more than one language, the Document shall be produced in English, if available. If no English version of Document is available, the Producing Party does not have an obligation to produce an English translation of that

Document.

2.      **Cost Shifting**: All costs associated with production of Documents pursuant to this Document Production Protocol shall be borne by the Producing Party. However, the Court may, in its discretion where supported by applicable law, apportion the costs of electronic discovery, consistent with applicable law, upon a showing of good cause by the Party seeking apportionment. The difference in the costs associated with production of Documents between the Parties shall not be a basis for apportioning the costs of electronic discovery.

3.      **Protective Order**: The terms of any Stipulated Protective Order filed with the Court are incorporated herein by reference and also govern all production pursuant to this Document Production Protocol.

4.      **Replacement Images**: In the event that an already produced Document or set of Documents has to be re-produced or a new Production Load File or "overlay" is produced for any production, the new production shall always maintain the same Bates number for any re- produced documents, with the addition of a suffix at the end of the Bates number, and without creating a new database record.

## G.      **PRIVILEGE LOG**[1]

1.      Consistent with Federal Rule of Civil Procedure 26(b)(5)(A), a Party withholding or redacting any Responsive Document on the grounds of privilege, immunity or any similar claim shall provide to the Receiving Party a log containing the information described in Paragraph G.2 ("Privilege Log"), except that the Parties shall not be required to provide a Privilege Log for any privileged communications or work product that post-dates the filing of the first complaint. The Parties hereby agree to exchange Privilege Log as follows:

---

[1] The Parties agree and stipulate that Paragraph G.1 of this Document Production Protocol and the Protective Order supplement Paragraph 1(d) of the District of Delaware Default Standard for Discovery.

a.      Pursuant to 9(c) of the Proposed Trial Schedule and Discovery Limits, the Parties agree to exchange partial Privilege Logs reflecting the Production of Custodial Documents From Contract Negotiators by July 7, 2023, fourteen (14) days after the June 23, 2023 production deadline.

b.      Pursuant to 9(d) of the Proposed Trial Schedule and Discovery Limits, the Parties agree to exchange complete Privilege Logs reflecting the remainder of each Parties' production by November 10, 2023, twenty-eight (28) days after the October 13, 2023 Document Production Substantial Completion deadline.

The Privilege Log shall be in Excel format or any other format that permits electronic sorting and searching and should include the following information, to the extent applicable and practicable, from the top-line email.

2.      For each Document withheld or redacted, the Privilege Log shall contain the following information:

a.      Privilege log entry number;

b.      BEGBATES (if Redacted);

c.      ENDBATES (if Redacted);

d.      BEGBATESATTACH (if Redacted);

e.      ENDBATESATTACH (if Redacted);

f.      CUSTODIAN;

g.      FROM;

h.      TO;

i.      CC;

j.      BCC;

k.      DOCTYPE;

l.      SUBJECT;

m.      SENTDATE;

n.      FILENAME;

o.      AUTHOR;

p.      MD5HASH;

q.      PRIV_TYPE (e.g., AWP, ACC);

r.      Description of the contents of the Document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the Document and the basis of the claim of privilege or immunity.

3.      Any email thread (i.e., a series of emails linked together by email responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity, or any similar claim shall be logged as one Document and shall be identified by the most inclusive email in the thread that is withheld or redacted; provided, however, that all senders and recipients, including copyees and blind copyees, on the entire thread shall be identified. For example, if a Party withholds on the basis of privilege an email thread consisting of a first sent email, a first reply email, and a second reply email, the thread shall be logged and identified by the second reply email only, but all senders and recipients within the thread shall be identified on the Privilege Log. Further, regarding redacted emails within a thread (i.e., where portions of the thread are privileged and portions are non-privileged), if a Party produces an email thread like the three-email thread in the foregoing example but redacts only the sent email and the first reply email, the redacted portion of the email thread shall be identified by the first reply email. The Parties shall not be required to log identical copies of an email that is included in a thread that has been logged in accordance with

16

this Paragraph. This Paragraph does not relieve the Producing Party from its obligation to produce non-privileged responsive communications from within a logged email thread containing both privileged and non-privileged information.

**H.     TIMING AND SEQUENCING OF ELECTRONIC DISCOVERY**

1.      To facilitate the timely production of Documents pursuant to this Document Production Protocol, subject to any guidance or limits imposed by Paragraphs 3, and 5(a), (c), (d) and (e) of the Default Standard for Discovery in this jurisdiction, upon the date mandated by the Court's scheduling order, or a date otherwise agreed to by the parties, each Producing Party shall disclose the following:

a.      A list of the non-custodial data sources that such Producing Party represents are most likely to contain discoverable information meaningful to resolution of the case on the merits, including remedies, along with a brief description of the nature of information expected to be located within such sources. A Requesting Party may request additional non-custodial data sources upon a showing of good cause, and such request shall not be unreasonably denied by the Producing Party.

b.      A list of the custodial data sources that such Producing Party represents are most likely to have discoverable information meaningful to resolution of the case on the merits, including remedies, along with a brief description of the nature of information expected to be within such sources. A Requesting Party may request additional custodial data sources upon a showing of good cause, and such request shall not be unreasonably denied by the Producing Party.

c.      **Search Terms and Date Filters**.[2] Each Producing Party must present a

---

[2] The Parties agree and stipulate to supplant Paragraph 5(b) of the District of Delaware Default Standard for Discovery with Paragraph H.1.c. of this Document Production Protocol.

complete list of search terms and date filters that are reasonably likely to identify responsive information meaningful to resolution of the case on the merits. Provided the Producing Party has offered a complete and reasonable list of search terms and date filters, a Requesting Party may request a reasonable number of additional search terms to be used in connection with the electronic search. A Requesting Party may request additional search terms upon a showing of good cause, and such request shall not be unreasonably denied by the Producing Party, subject to the guidance and limitations of this district's Default Standard for Discovery. The search terms shall be narrowly tailored to the particular issues in the case. Focused terms, rather than over-broad terms shall be employed. The Parties shall cooperate to test proposed search terms prior to committing to their use. Indiscriminate terms, such as the producing company's name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overinclusion. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

d.      Any issues relating to the following:

(i)      Any ESI (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i);

(ii)      Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery; and

(iii)      Production of information subject to privacy protection, including

18

information that may need to be produced from outside the United States and subject to foreign laws.

2.      Provided, however, that nothing in this section prevents a Party from producing responsive information from a non-custodial or custodial data source beyond the limits agreed to in Paragraph H.

**I.      MANNER OF SERVICE**

1.      Pursuant to Fed. R. Civ. P. 5(b)(2)(E), all discovery requests shall be served by email in .pdf format accompanied by a Word version for use by the Receiving Party.

2.      All responses and objections thereto (but not necessarily Documents produced pursuant to any such request) shall be served by email in a searchable .pdf format.

3.      All discovery requests, responses, and objections served by email shall constitute timely service on that day and the additional time for service by electronic means pursuant Fed. R. Civ. P. 6(d) shall not apply.

4.      All produced Documents shall be served either by .ftp site or by hand delivery or by Federal Express (or similar means) for next day delivery. When serving produced Documents by hand delivery or next day delivery, such delivery shall be made on electronic media with encryption or other similar means of security. Where service is made by next day delivery, service shall be effective on the day sent.

5.      For service of discovery requests, discovery responses and objections, and Documents by .ftp, the parties designate the following counsel to receive .ftp instructions and passwords at the email addresses identified below. Such counsel list may be supplemented or modified by email notice by the other Party. For hand delivery or overnight delivery of Documents, the parties designate the following counsel to receive the Documents at the addresses identified below with a copy of production cover letters to be sent to the email addresses identified below.

| Party | Service by E-mail | Service by Hand/Overnight Mail |
|---|---|---|
| Regeneron | RegeneronAmgen-discovery@weil.com | Regeneron Amgen Discovery c/o Eric Hochstadt Weil, Gotshal & Manges LLP 767 Fifth Avenue New York, NY 10153 |
| Amgen | EStock@gibsondunn.com AJohnson@gibsondunn.com AJantzi@gibsondunn.com BSherwood@gibsondunn.com JYang@gibsondunn.com MKutz@gibsondunn.com CLeahy@gibsondunn.com | Regeneron Amgen Discovery c/o Eric Stock Gibson, Dunn & Crutcher LLP 200 Park Avenue New York, NY 10166 |

**J.**     **MODIFICATION**

This Document Production Protocol may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**Schedule A: Production Fields for ESI**

| Field Name (variations of the names below may be used) | Description |
| --- | --- |
| Volume | The Production Volume as defined in Section A.16. |
| Beg Bates | Number endorsed on first page of document. |
| End Bates | Number endorsed on last page of document. |
| Page Count | Total number of pages in document. |
| Beg Attach | Number endorsed on first page of first document in a family (i.e., documents and all attachments thereto). |
| End Attach | Number endorsed on last page of last document in a family (i.e., documents and all attachments thereto). |
| Confidential Designation | The confidential designation endorsed on the document. |
| Time Zone | Time Zone in which the data was processed. |
| Custodian | Name of Person from whose files the document is collected and produced. |
| Duplicate Custodian(s) | Name of Person(s), separated by semi-colons, that possessed the document. |
| Authors(s) | If available, the person(s) who created, wrote, reviewed, signed, or approved the document. |
| FROM | Sender of email message. |
| TO | Recipient of email message in the "To" field. |
| CC | Recipient of email message in the "CC" field. |
| BCC | Recipient of email message in the "BCC" field. |
| Subject | Subject line of the email message. |
| Title | Title field of the document. |
| Date Created | If available, the date the document was created. |

| Field Name (variations of the names below may be used) | Description |
|---|---|
| Date Modified | If available, the date the document was last modified. |
| Sent Date | Date email message was sent. |
| Received Date | Date email message was received. |
| Time received | Time email was received. |
| TimeMod | Time the document was modified. |
| Modified By | Person who has modified a document. |
| Attach | The files name(s) of the attached documents. |
| Attachment Count | Number of attachments to an email. |
| Redacted | Whether the document has been redacted. (Y/N) |
| Track Changes | Indicates if a file has track changes. (Y/N) |
| Embedded | Indicates if a file has embedded files. (Y/N) |
| Conversation Index | Email thread identifier. |
| File Name | Original file name. |
| Document Type | The file extension describing the type of document (e.g., Microsoft Word document). |
| FullText | Relative path to text file containing extracted text or OCR text on Production Media. |
| Native Path | Relative path to native file on Production Media. |
| Hash Value (e.g., MDS or SHA-1) | The hash of the native produced file, not the produced TIFF files. |

## **Schedule B: Production Fields for Paper Discovery**

| Field Name (variations of the names below may be used) | Description |
|---|---|
| Volume | The Production Volume as defined in Section A.16. |
| Beg Bates | Number endorsed on first page of document. |
| End Bates | Number endorsed on last page of document. |
| Page Count | Total number of pages in document. |
| Beg Attach | Number endorsed on first page of first document in a family (i.e., documents and all attachments thereto). |
| End Attach | Number endorsed on last page of last document in a family (i.e., documents and all attachments thereto). |
| Confidential Designation | The confidential designation endorsed on the document. If no designation is present, a default value of "None" will be coded. |
| Custodian | Name of Person from whose files the document is collected and produced. |
| Duplicate Custodian(s) | Name of Person(s), separated by semi-colons, that possessed the document. |
| FullText | Relative path to text file containing extracted text or OCR text on Production Media. |

**IT IS SO STIPULATED,** through Counsel of Record.

WILKS LAW, LLC

*/s/ David E. Wilks*
David E. Wilks (DE Bar No. 2793)
Scott B. Czerwonka (DE Bar No. 4844)
4250 Lancaster Pike Suite 200
Wilmington, DE 19805
Telephone: (302) 225-0850
Fax: (302) 225-0851


WEIL, GOTSHAL & MANGES LLP

Elizabeth Stotland Weiswasser (admitted *pro hac vice*)
Jonathan D. Polkes (admitted *pro hac vice*)
Eric S. Hochstadt (admitted *pro hac vice*)
Adam B. Banks (*pro hac vice* pending)
Jessica L. Falk (*pro hac vice* pending)
Robert Niles-Weed (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Fax: (212) 310-8007

Michael R. Moiseyev (admitted *pro hac vice*)
Priyata Y. Patel (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW
Washington, D.C. 20036
Telephone: (202) 682-7000
Fax: (202) 857-0940
*Attorneys for Regeneron Pharmaceuticals, Inc.*

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Melanie K. Sharp*
Melanie K. Sharp (DE Bar No. 2501)
James L. Higgins (DE Bar No. 5021)
Taylor E. Hallowell (DE Bar No. 6815)
1000 North King Street
Wilmington, DE 19801
Telephone: (302)571-6600

msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

GIBSON, DUNN & CRUTCHER LLP

Eric J. Stock (admitted *pro hac vice*)
Ben A. Sherwood (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

Stephen Weissman (admitted *pro hac vice*)
Richard G. Parker (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave, NW
Washington, D.C. 20036-5306
Telephone: (202) 955-8500

Ashley E. Johnson (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone: (214) 698-3100

*Attorneys for Amgen Inc*

SO ORDERED this _____day of _____, 2023.


_____
UNITED STATES DISTRICT JUDGE