# WILKS LAW LLC

June 5, 2023

**DAVID E. WILKS**
Direct Phone: 302.225.0858
Email: dwilks@wilks.law

**VIA CM/ECF**

The Honorable Jennifer L. Hall
United States District Court District of Delaware
844 N. King Street, Unit 17, Room 3124
Wilmington, DE 19801-3555

Re: *Regeneron Pharmaceuticals, Inc. v. Amgen Inc.* No.: 1:22-cv-00697-RGA-JLH

Dear Judge Hall:

This firm and Weil, Gotshal & Manges LLP represent Regeneron. We write concerning two issues for which the parties have reached an impasse. The first dispute arises out of the recent revelation that the FTC has been investigating Amgen for the same conduct alleged in Regeneron's complaint. The FTC has independently concluded that Amgen has engaged in anticompetitive cross-market product bundling, notwithstanding Amgen's representations to this Court that no such conduct has occurred. The second dispute relates to Amgen's unilateral decision to collect documents from only four document custodians—a limitation that fails to satisfy the Court's order that "Amgen's [June 23] production include *'any documents that are likely to evidence any sort of bundling or any contract terms*,'" and is designed to shield highly relevant discovery from Regeneron and the Court. 4/4/2023 Tr. ("4/4 Tr.") at 19:16-18; D.I. 67 ¶ 9(c) (emphasis added).

## A. **Amgen's Withholding of Relevant Information from Related FTC Litigation**

On May 16, 2023, the FTC sued to block Amgen's acquisition of Horizon Therapeutics, alleging that the merger may violate Section 7 of the Clayton Act by substantially lessening competition and/or tending to create a monopoly. FTC Compl. ¶ 1. According to the FTC, "[t]he prospect that Amgen could leverage its portfolio of blockbuster drugs to gain advantages over potential rivals" exists because "***Amgen has engaged in cross-market bundling***, which involves the conditioning of rebates (or offering incremental rebates) on a product such as [redacted by FTC] in exchange for preferred formulary placements for Amgen drugs in other, unrelated product markets." *Id*. ¶ 63 (emphasis added). The FTC's allegations corroborate Regeneron's plausible allegations in this case relating to the PCSK9i market. Indeed, the FTC Complaint cites this action and the Court's denial of Amgen's motion to dismiss, and, the FTC specifically identified Amgen internal documents to support its allegations. *Id*. ¶¶ 5, 62-64.

Importantly, the FTC reached its conclusion that Amgen has offered anticompetitive multi-product bundles based on its own independent review of the extensive discovery it obtained from Amgen during the FTC's review of the proposed merger. Accordingly, Regeneron requested that Amgen produce (1) a copy of the FTC Complaint with Amgen's confidential information un-redacted; (2) a copy of the documents Amgen produced to the FTC; (3) a list of the custodians from whose files Amgen produced documents to the FTC; and (4) Amgen advocacy to the FTC "to address the very concerns alleged in the FTC's complaint."[1] *FTC v. Amgen*, D.I. 52 at 3.

---

[1] Amgen produced the unredacted FTC Complaint on June 2, attached under seal as **Appendix B**.

The Honorable Jennifer L. Hall
June 5, 2023
Page 2

There is no valid objection to the prompt disclosure of these materials. First, there is no burden to Amgen to re-produce the documents it has already given to the FTC—the materials have already been collected, reviewed and produced. Second, there are no privilege or other confidentiality concerns; to the extent the FTC production includes material related to drugs not at issue in this matter, the parties have a heavily-negotiated Protective Order, D.I. 67, that allows for the production of such materials to be made on an "Outside Counsel's Eyes Only" or "Attorneys' Eyes Only" basis. Third, Regeneron is entitled to know whose files Amgen collected from that revealed evidence of "cross-market" bundling. At a minimum, if those individuals are not the four custodians Amgen has unilaterally chosen for strategic reasons, they must be added as custodians called for by the Court's order. D.I. 67 ¶ 9(c).

Finally, the relevance of these materials is self-evident and cannot be disputed.[2] The nature, frequency, magnitude, and power of Amgen's "cross-market" bundling—leveraging its inflammation products Enbrel® and Otezla®—has now been revealed by confidential evidence from Amgen's files, and is fatal to many of Amgen's arguments, including on this discovery dispute. *See* SEALED FTC Compl. ¶¶ 61-65, 68. This is why courts routinely require production of such highly relevant and previously produced materials in related government investigations.[3] Amgen's only objection is based on a continued re-writing of Regeneron's complaint, the rejection of Amgen's Rule 12 motion, and a tortured interpretation of this Court's Scheduling Order. According to Amgen, it need only produce files from its employees responsible for negotiations of commercial contracts with Optum and Express Scripts because bundles with those PBMs are the only ones at issue. As this Court recognized, ***even without the benefit of discovery***, and setting aside the sufficiency of the allegations with respect to these two major payors, Regeneron has plausible allegations of bundling by Amgen at other payors, market-wide foreclosure of greater than 50%, and ongoing behavior by Amgen to push Praluent® out of the market so that Amgen can maintain its monopoly for Repatha®. *See* D.I. 49 at 5, 9, 11-15; *see also* D.I. 1 ¶¶ 68-86.

Regeneron and this Court are entitled to an accurate discovery record free of artificial shaping. *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 18-MD-02843-VC, 2023 WL 1871107, at *3 (N.D. Cal. Feb. 9, 2023) (sanctioning conduct designed to obfuscate: "The basic philosophy underlying discovery is that claims should be litigated based on a complete record of the underlying facts."). Given the FTC Complaint and Amgen's production of materials to the FTC, there is no basis to withhold them here—certainly not Amgen's two-phased discovery approach that was predicated on burden and the now debunked notion that Amgen does not use cross-market bundling (at least according to internal documents which Amgen produced to the FTC but refuses to produce in this action).

---

[2] The FTC materials are also relevant and should be produced in response to Regeneron's RFPs 1, 6 and 7, which request documents relating to competition for Repatha®, Enbrel®, and Otezla®, including, incentives and rebates offered to third party payors/PBMs during contract negotiations.
[3] *See, e.g.*, *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 18-CV-1781, 2020 U.S. Dist. LEXIS 197630 (S.D.N.Y. Oct. 23, 2020) (ordering production of overlapping documents produced to CFPB during investigation of defendants); *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-02687, D.I. 209 (D.N.J. July 5, 2016) (same for DOJ production); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-02143-RS, D.I.370, 379 (N.D. Cal. 2011) (same for DOJ production).

The Honorable Jennifer L. Hall
June 5, 2023
Page 3

### B. Amgen's Deficient Custodian Proposal

Amgen's attempt to cabin its document search to the same four individuals who Amgen originally proposed *before* the parties' month-long negotiations on this topic falls far short of what the Court requires. When Regeneron's repeated requests for Amgen to expand its proposal went unanswered, Regeneron proposed that Amgen's custodian list include eight positions comprising sixteen individuals. Amgen refused and, only when Regeneron indicated that it would raise this dispute, did Amgen agree to include two additional custodians, *if, and only if*, Regeneron did not seek relief from the Court. When Regeneron did not agree, Amgen revoked its conditional offer and reverted to its initial four-custodian position.

Regeneron is entitled to Amgen discovery that includes "any documents that are likely to evidence any sort of bundling or any contract terms." 4/4 Tr. at 19:16-18; D.I. 67 ¶ 9(c). Regeneron's proposal includes the complete set of individuals who held eight relevant positions for the duration of the relevant time period (January 1, 2019 through the present). The requested individuals were responsible for developing, negotiating, implementing, and/or approving the cross-market bundles. Regeneron expects that their files will show Amgen's development and approval of the bundle, the people and decision-making involved in the composition of the bundle, and the internal analysis of and strategy for the bundle—exactly what Amgen wants to shield. Though multiple individuals have held these roles over the relevant period, Amgen's employee turnover should not prejudice Regeneron's access to relevant information. Notably, Regeneron's own custodian proposal of ten individuals, whose materials we are currently preparing for production, reflects all of the equivalent roles whose relevance Amgen has never disputed.

Amgen's custodian proposal also is insufficient because the parties have agreed to mitigate burden by utilizing tailored search terms and deduplication to streamline the total volume of documents to review and produce. *See Phillips Med. Sys. Nederland B.V. v. TEC Holdings, Inc.*, No. 3:20-CV-021, 2021 WL 1234596, at *10 (W.D.N.C. Mar. 31, 2021); *Fam. Wireless #1, LLC, et al. v. Auto. Tech., Inc.*, No. 3:15 CV 01310 (JCH), 2016 WL 2930887, at *3 (D. Conn. May 19, 2016). Amgen has unilaterally chosen to include only four custodians that barely scratch the surface of relevant information: (1) two individuals who dealt with only Express Scripts and Optum, even though it is improper to limit discovery to these two payors as discussed above; and (2) two individuals with internal market access positions, one of whom was not even in the role for the entirety of the relevant period. Most egregiously under both its current and withdrawn conditional offer, Amgen plans to withhold information from four witnesses who Amgen *intends to rely on* for topics like "Amgen's contracting practices with respect to Repatha®" or "Amgen's contracting practices with Third Party Payors and PBMs with respect to Enbrel®, Otezla®, and Repatha.®" Amgen's Rule 26 Initial Disclosures at 4 attached hereto as **Appendix C**.

In short, Amgen continues to try to shield highly relevant discovery so that it produces as little information as possible before it seeks to file another dismissal motion on an incomplete and artificial record. This is improper, highly prejudicial to Regeneron, violates the Court's order, and simply contradicts Fed. R. Civ. P. 26(b), which requires Amgen to produce "discovery regarding any nonprivileged matter that is relevant to any [of Regeneron's] claim[s] or defense[s]." Accordingly, Regeneron respectfully requests that Amgen be compelled to produce (i) the materials Amgen has provided to the FTC, and (ii) responsive material from the custodians identified in **Appendix A** hereto.

The Honorable Jennifer L. Hall
June 5, 2023
Page 4

We are available at the Court's convenience to discuss.

                              Respectfully,

                              /s/ David E. Wilks

                              David E. Wilks
                              (Bar No. 2793)

cc: Counsel of Record (via CM/ECF)