IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REGENERON PHARMACEUTICALS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No.:  22-00697-RGA-JLH |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| AMGEN INC., | ) | ██████████████████ |
| | ) | |
| Defendant. | ) | **Redacted – Public Version Filed on: June 15, 2023** |

**LETTER TO THE HONORABLE JENNIFER L. HALL FROM MELANIE K. SHARP
REGARDING DISCOVERY DISPUTE**

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Taylor E. Hallowell (No. 6815)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
thallowell@ycst.com

GIBSON, DUNN & CRUTCHER LLP
Eric J. Stock
Ben A. Sherwood
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

Stephen Weissman
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
(202) 955-8500

Ashley E. Johnson
2001 Ross Avenue, Suite 2100
Dallas, TX  75201
(214) 698-3100

*Attorneys for Amgen Inc.*

Dated:  June 8, 2023

Dear Judge Hall:

Ever since this Court entered its Scheduling Order adopting Amgen's proposal for sequenced discovery, Amgen has been working to implement it—and Regeneron has been trying to circumvent it. Regeneron never made a serious attempt to agree to a reasonable number of "Contract Negotiator" custodians for the June 23 deadline—it instead continued to press for what is effectively full discovery by that date, insisting on no fewer than *sixteen* custodians. Now it is also hoping to use the FTC's challenge to Amgen's acquisition of Horizon Therapeutics to ask the Court to reconsider the sequenced discovery set forth in the Court's Scheduling Order.

The Court should reject that effort, and instead enforce the schedule it already set. For the "Contract Negotiator" discovery due June 23, Amgen is prepared to produce documents from exactly the number and type of custodians it described during the hearing in which the Court agreed to adopt sequenced discovery. Moreover, the Contract Negotiator portion of discovery is almost over and under the Scheduling Order Amgen would produce documents from most of the custodians Regeneron seeks by October—just four months away. Finally, Regeneron's request for over one million documents that Amgen produced to the FTC in a merger investigation—documents that mostly relate to drugs not at issue in this action—should be rejected out of hand. Those requests are massively overbroad, and clearly premature under the Scheduling Order.

**Factual and Procedural Background**

Regeneron's complaint challenges Amgen's offer of bundled discounts on certain drugs—Otezla® and Enbrel®—that are allegedly conditioned on the customer covering a different Amgen drug, Repatha®, instead of Regeneron's competing drug Praluent®. There is nothing inherently unlawful about such discounts; in fact, courts are reluctant to condemn conduct that involves lowering prices. The legality of a bundled rebate depends on context and its overall competitive effect. *See Eisai, Inc. v. Sanofi Aventis*, 821 F.3d 394, 402–03 (3d Cir. 2016).

Amgen strongly believes that this case can be dismissed—or at least dramatically streamlined—based solely on a review of its contracts. That is because the contracts show that several key allegations made by Regeneron about Amgen's agreements are false, specifically: (1) that any Amgen contract conditions *Otezla*® rebates on Repatha® coverage; and (2) that the Optum contract conditions Enbrel® or Otezla® rebates on *exclusivity* for Repatha®. For these reasons, Amgen has a strong case for eliminating from the case any claims of Otezla® bundling, and/or for summary judgment for lack of substantial foreclosure. D.I. 59 at 3.

Contrary to Regeneron's suggestion, there is nothing in the FTC complaint that conflicts with Amgen's position here, or that undermines the rationale for the sequenced discovery adopted in the Court's Scheduling Order. Even if FTC's allegations were taken as true (which they should not be), they are consistent with the factual bases of Amgen's proposed early motions, described above.[1]  Indeed, the FTC complaint nowhere alleges bundled rebates for *Otezla*®, and ███████

_____

[1] Regeneron's letter also is misleading when it suggests—without citation—that Amgen somehow denied its use of "cross-market bundling". *See, e.g.,* D.I. 105 at 2. ███████

**Amgen's Proposed Contract Negotiator Custodian List Is Reasonable and Consistent With Both the Purpose of the Contract Negotiator Discovery and the Parties' Expectations**

On May 12, 2023, Amgen produced nearly ten thousand pages of contracts. These contracts show no bundled rebates for *Otezla* conditioned on Repatha® coverage, and ███████████████████████████████████████████████████████████████████████

To address Regeneron's baseless speculation of "a verbal agreement" (D.I. 34 at 11), or other correspondence with additional or different terms, Amgen proposed "Contract Negotiator" discovery—discovery that would be inherently limited because the purpose is to allow Regeneron to test whether any such other agreements exist. In its submission, Regeneron complained that the Contract Negotiator discovery contemplated by Amgen "*would involve depositions of less than five witnesses.*" D.I. 59 at 2 (emphasis added). Amgen likewise stated its expectation that it would involve about "*four custodians.*" Apr. 4. Tr. at 11:17-18 (emphasis added).

The four custodians proposed by Amgen for its Contract Negotiator production will provide Regeneron with everything it needs to oppose the early motions contemplated by the Scheduling Order. Amgen has included the lead account representatives for ESI and Optum, and their direct superior, Tom Moore, who has served as Amgen's lead external-facing negotiator for *all third party payors* since mid-2020. *See* Exhibit A. Amgen also included Moore's superior, Kave Niksefat, who led the Amgen group responsible for PBM contracting from early 2019-2020.

Regeneron proposes a list of *sixteen custodians* that goes far beyond the scope of Contract Negotiator discovery. Regeneron knows this; it stated at the hearing: "There are decision makers. There are strategy planners. There are pricing committees. *They're proposing not to search any of those people.*" April 4 Hearing Tr. 14:3–7 (emphasis added). Yet Regeneron now demands those same custodians be included. Of the 12 disputed custodians, 7 have pricing or brand strategy roles. *See* Ex. B (Regeneron Appx. A, revised). Such discovery is not of Contract Negotiators— nor is it designed to find undisclosed bundled rebates—it is simply a reversion to Regeneron's original proposal of full discovery on an unrealistic timeline.

Amgen sought to compromise on a reasonable number of Contract Negotiator custodians, and offered to add two more, but Regeneron refused to make *any* compromises. *See* Exs. C, D (Amgen letters). Regeneron's list eliminates the benefit of sequenced discovery.

Regeneron attempts to distort the meaning of the Court's instruction that the parties include in their productions at this stage "any documents that are likely to evidence any sort of bundling or any contract terms." D.I. 67 ¶ 9(c) (quoting April 4 Tr. at 19:16-18). This instruction came as part of a discussion wherein the Court explained that Amgen's production of contracts, plus its negotiator documents, should disclose to Regeneron the relevant terms (especially bundled rebates) of all Amgen's agreements with PBMs. Amgen's proposed Contract Negotiator custodians achieve that objective; we are unaware of any bundling or contract terms that will remain undisclosed after this production. The remainder of the disputed custodians are not necessary for the Contract Negotiator phase. *See* Exhibits A, B.

**Regeneron's Request for FTC Material Should Be Denied or Deferred Until September**

The Court should deny Regeneron's requests for materials Amgen provided to the FTC, or at least defer resolving this issue until after the Contract Negotiator discovery. Amgen offered a reasonable compromise on these requests; it produced to Regeneron the FTC complaint with all Amgen-related information unredacted, and offered to produce by June 23 Amgen documents quoted in the FTC Complaint responsive to Regeneron's discovery requests. Regeneron refused.

Regeneron's request for all documents produced to the FTC, regardless of relevance to this case, is vastly overbroad and legally baseless. The FTC did not, as Regeneron asserts, "conclude[] that Amgen has engaged in anticompetitive cross-market product bundling." D.I. 105 at 1. It did find that Amgen uses some bundled rebates, which as noted, this Court already knows. But the FTC case focuses on whether Amgen's acquisition of Horizon will result in future anticompetitive effects in markets for drugs *sold by Horizon*; it is not about Regeneron.

Requiring Amgen to turn over its entire FTC production to Regeneron would not be proportional. The FTC investigatory subpoena was extremely broad, covering *twenty-seven products* sold by Amgen and over *twenty pipeline candidates*. Only three Amgen products (really, two) are relevant in this case. The FTC's investigation called for documents pertaining to all sorts of topics irrelevant here, such as the details and synergies of Amgen's proposed transaction with Horizon, Amgen's future plans for Horizon products, the trade associations to which Amgen belongs, other M&A deals, and highly detailed information about the 24 Amgen drugs not at issue. In Exhibit E, we provide some examples of these FTC requests. Amgen custodians for the FTC case also included those with roles irrelevant here, such as acquisition integration, business development, and R&D. Amgen produced to FTC over one million highly confidential and competitively sensitive documents, including agreements, information, or data relating or belonging to multiple third parties, e.g., hospitals, clinics, and data vendors—many of whom had to provide consent for such production—concerning dozens of irrelevant drugs.

There is no legal basis for requiring Amgen to disclose these materials. Courts do not order parties to reproduce regulatory productions wholesale to civil plaintiffs where the regulatory matter involved many unrelated products or different or broader factual questions than the civil case. *See, e.g., Pensacola Firefighters' Relief Pension Fund Bd. of Trs. v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589, 597 (N.D. Fla. 2010) ("the court finds persuasive defendant's position that production of all of the documents produced to the SEC, without a more particularized request, could potentially allow plaintiff to bypass the limitations on the scope of discovery established by the Rules"); *Cap. Ventures Intern. v. J.P. Morgan Mortg. Acquisition Corp.*, 2014 WL 1431124, at *2 (D. Mass. Apr. 14, 2014). While there are some documents in the FTC production responsive to Regeneron's RFPs, Regeneron will receive this information in the ordinary course of discovery. Similarly, Regeneron's request for Amgen's *advocacy* to FTC is overbroad and meritless for the same reasons. *Id.* Moreover, such materials are not even *evidence*—but rather attorney-generated materials. The production of such materials is not justified here, especially where important distinctions exist between the civil and regulatory matters. *See id.; Cf. Midwest Gas Servs., Inc. v. Indiana Gas Co.*, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) ("plaintiffs' counsel must do their own work and request the information they seek directly"). Ordering such production would also discourage open communications between a company and agency. *See Police and Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 2010 WL 935317, at *2 (S.D.N.Y. Mar. 12, 2010). Nor has Regeneron established a pressing need for it.

Respectfully,

*/s/ Melanie K. Sharp*

Melanie K. Sharp (No. 2501)

MKS:mg

cc:    All Counsel of Record (by e-mail)

4

# Exhibit A

**To:**       USVA-All; USBO-LT; USVA Business Partners



**From:**     Tom Moore, VP Market Access, Contracting & Trade

**Subject:**  Organizational Announcement – Market Access National Accounts

We have witnessed significant consolidation amongst our country's largest Pharmacy Benefit Managers (PBMs) & Health Plans over the recent years.  As a reminder, in 2018, CVS acquired Aetna and Cigna purchased Express Scripts (ESI), emulating the PBM/Health Plan model in place with OptumRx and UnitedHealthcare (UHG).  In 2019, CVS signed Anthem as a client, while ESI successfully brought in Prime Therapeutics via the generation of its novel Rebate Management Organization ("RMO"), Ascent. In 2020, CVS responded with the creation of its own RMO, Zinc.

These activities have resulted in three primary payers – CVS, UHG, and ESI (which we have internally termed "MEGA" accounts) – who now represent over 80% of all insured lives within the United States. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████  As a result, I am pleased to announce a redesign of our US Market Access National Accounts structure and leadership team as follows:

**Market Access National Accounts Leadership Structure**



- The CVS Health enterprise will be led by **Anita Alamshaw** and her team will lead commercial planning, execution and cross-functional engagement with Zinc, CVS, and Aetna.
- The UnitedHealth Group enterprise will be led by **Adam Grennan** and his team will lead commercial planning, execution and cross-functional engagement with UnitedHealthcare, OptumRx, and OptumCare.
- The Express Scripts enterprise will be led by **Billy West** and his team will lead commercial planning, execution and cross-functional engagement with Ascent, Express Scripts, Cigna, Prime, and Anthem activities.
- **Stephanie Miller** and her team will lead a newly created vertical of Strategic Accounts. This team will coordinate negotiations and activities with Kaiser, Humana, Magellan, MedImpact, Envision, and Federal Programs (VA & DoD). ██████████████████████████
████████████████████████████████████████████████████

███████████████████████████████████████

Please join me in congratulating these individuals on their new roles. The backfills of Adam, Billy, and Stephanie, as well as an updated National Accounts reporting structure, will be subject to future announcements.



**Adam Grennan**
**Promotion: Executive Director, National Accounts – UHG**

**Adam Grennan** is being promoted, effective immediately, to Executive Director of National Accounts - UHG, reporting directly to me. In this role, Adam will lead the account relationship and strategy for all of UnitedHealth Group, including UnitedHealthcare, OptumRx, and OptumCare activities on behalf of US Value & Access.

Since joining Amgen in 2007, Adam has held roles of increasing responsibility and team leadership across both the OBU and Market Access businesses. Most recently Adam was the National Account Director of UnitedHealth Group. Previously, Adam was promoted from the regional Market Access team to one of the first National Account Senior Managers. Adam started with Amgen in the OBU and was promoted from field sales to leading teams as a district manager. During his time at Amgen, Adam has numerous awards and contests including multiple Chairman's Circle and multiple Team Excellence wins.

████████████████████████████████████████



**Billy West**
**Promotion: Executive Director, National Accounts - ESI**

**Billy West** is being promoted, effective immediately, to Executive Director of National Accounts - ESI, reporting directly to me. In this role, Billy will lead the account relationship and strategy for all Express Scripts, Cigna, Ascent, Anthem and Prime Therapeutics activities on behalf of US Value & Access.

Billy joined Amgen in 2006 after spending the first part of his career leading the BCBS Texas account team at Prime Therapeutics. During his time at Amgen, he has leveraged his health plan and PBM experiences in roles of increasing responsibility on regional and national account teams, while most recently leading a team covering ESI, Cigna, Humana and Federal Accounts. Billy is a 3-time Chairman's Circle winner and was the content expert and instructor for the award-winning training platform, Financial Literacy for Account Managers (aka "Follow the Healthcare Dollar") that has been a staple for USV&A new hire training for several years.



### Anita Alamshaw
### New Role: Executive Director, National Accounts - CVS

**Anita Alamshaw** is taking on a new role, effective immediately, as Executive Director of National Accounts - CVS, continuing to report directly to me. In this role, Anita will lead the account relationship and strategy for all CVS, Zinc, and Aetna activities on behalf of US Value & Access.

Anita has 25+years of experience in the bio-pharmaceutical industry. In March 2017, Anita joined Amgen to lead a team responsible for representing the Amgen portfolio of products across several top-tier National Accounts. Anita joined us from Biogen where she successfully built and led a high-performing National and Regional Account Team as the Senior Director of Market Access. Prior to joining Biogen, Anita was the Senior Director of Industry Relations at United Healthcare/OptumRx. She was in charge of leading a team responsible for managing the entire Specialty Pharmacy book of business including Specialty rebate agreements as well as SPP Data/Service/Purchase. In addition, she served a key leadership role through the highly successful integration between OptumRx PBM and UnitedHealth Group as millions of lives migrated to the PBM.

Prior to joining OptumRx, Anita held many high-level positions such as Vice President and Director at various organizations including: Boehringer-Ingelheim, Johnson & Johnson and Upjohn Pharmaceuticals. She has award-winning experience within the biopharmaceutical industry and brings a strong background that includes Market Access, Sales, Marketing, Trade and Distribution, Specialty Pharmacy and Health Plan/PBM experience.

Anita attended undergraduate studies at the University of California, Riverside where she received a B.A. in business then earned her M.B.A. degree from Pepperdine University.



## Stephanie Miller
## New Role: Director, Strategic Accounts

Stephanie Miller is taking on a new role, effective immediately, as Director of Strategic Accounts, reporting directly to me. In this role, Stephanie will lead the account relationship and strategy for all Humana, Kaiser, Magellan, MedImpact, Envision, and Federal Program (VA & DoD) activities on behalf of US Value & Access.

Since joining Amgen in 1996, Stephanie has held many roles across the Sales and Market Access businesses. Most recently Stephanie has been Amgen's National Accounts Director, with responsibility for PBM Prime Therapeutics, Retail Chain Walgreens and Specialty Pharmacy AllianceRx. During her tenure with Amgen Stephanie has worked with Providers, Academic Centers, Integrated Delivery Networks, PBMs, Specialty Pharmacy, GPOs, Government, Regional and National Payers. Stephanie has numerous awards and recognitions including multiple Chairman's Circle and Team Excellence wins.

# Exhibit B

| # | Title | Individual | Time in Role | Relevance | Status/Description of Role |
|---|-------|-----------|--------------|-----------|----------------------------|
| 1 | SVP, US General Medicine Business / US Business Operations | Corinne Le Goff | 2019 - Jan. 2021 | Setting and/or approving Amgen's business and pricing strategy of the General Medicine/Specialty portfolio including nephrology and cardiovascular. | Senior officer who was not a contract negotiator and did not directly oversee the individuals negotiating contracts with third party payors. |
| | | Ian Thompson | Jan. 2021 - Present | | Senior officer who was not a contract negotiator and did not directly oversee the individuals negotiating contracts with third party payors. |
| 2 | VP, Market Access, Contracting & Trade | *Tom Moore[1,2]* | Mid/Late 2020 - Present | Amgen's business strategy and contracting practices with Third- Party Payors and PBMs for Enbrel®, Otezla®, and Repatha®. | Already included as a Contract Negotiator Custodian. |
| 3 | VP, US Value and Access | *Kave Niksefat[1,2]* | 2019 - 2020 | Same | Already included as a Contract Negotiator Custodian. |
| | | *Jennifer Norton[1,2]* | 2021 - Mar. 2023 | | From 2020-2021, role was internal-facing, focused on pricing and market analytics. From 2021 to 2023, supervised Tom Moore and the contract negotiations team. Possesses no unique contract negotiator information because by the time that Ms. Norton came to this position, the contract negotiations were being led and handled by Tom Moore and his team. |
| 4 | VP, Value, Access / Pricing | *Tom Moore[1,2]* | Jan. 2020 - Mid/Late 2020 | Same | See above. |
| | | *Jennifer Norton[1,2]* | 2020 - 2021 | | See above. |
| | | David Zimmer[2] | Mar. 2021 - Present | | Not responsible for negotiating contracts with customers. Role is primarily internal-facing, focused on pricing. |

\* Amgen has reproduced the Appendix A that was attached to Regeneron's letter to the Court and inserted additional information in the column labeled "Status/Description of Role."

| # | Title | Individual | Time in Role | Relevance | Status/Description of Role |
|---|-------|-----------|-------------|-----------|---------------------------|
| 5 | VP and General Manager, Bone Health & Cardiology Business Unit USA / Cardiovascular & Nephrology | Roland Wandeler | 2019 - May 2020 | Amgen's business strategy with respect to Repatha®; Amgen's contracting practices with respect to Repatha, business conditions and the competitive landscape with respect to Repatha®. | Oversaw cardiovascular business at Amgen. Not responsible for negotiating contracts with third party payors. Left company in May 2020 before Regeneron alleges wrongful conduct began. |
| | | Christine Fox | 2021 | | Oversaw cardiovascular business at Amgen. Not responsible for negotiating contracts with third party payors. |
| | | Jasper van Grunsven[2] | 2022 - Present | | Oversaw cardiovascular business at Amgen. Not responsible for negotiating contracts with third party payors. |
| 6 | VP and General Manager, Inflammation and Nephrology Business Unit / US Inflammation Business | Helen Jordan | 2019 - 2020 | Amgen's business strategy, contracting practices, and competitive landscape with respect to Enbrel® and Otezla®. | Oversaw inflammation business at Amgen. Not responsible for negotiating contracts with third party payors. |
| | | *Kave Niksefat[1,2]* | 2021 - 2023 | | See above. |

| # | Title | Individual | Time in Role | Relevance | Status/Description of Role |
|---|-------|-----------|--------------|-----------|----------------------------|
| 7 | National Account Director / Executive Director and General Manager, US Market Access | Adam Grennan | 2019 - Present | Amgen's business strategy and contracting practices and interactions with Third-Party Payors and PBMs (UnitedHealthcare, Optum) with respect to Enbrel®, Otezla®, and Repatha®. | Already included as a Contract Negotiator Custodian. |
| | | Billy West | 2019 - Present | Same for Third-Party Payors and PBMs, Express Scripts, Ascent, Cigna, Prime, and Anthem. | Already included as a Contract Negotiator Custodian. |
| | | Stephanie Miller | 2020 - Present | Same for Third-Party Payors and PBMs, strategic accounts (e.g., Kaiser, Humana), and CVS starting Jan. 2023. | Responsible for smaller accounts (until 2023), not ESI or Optum.  Regeneron does not allege in the Complaint that there are bundled discounts for these smaller accounts outside the four corners of the produced contracts.  Ms. Miller's supervisor, Mr. Moore, is included as a custodian. |
| | | Anita Alamshaw | 2019 - Jan. 2023 | Same for Third-Party Payors and PBMs, CVS. | Oversaw Amgen's relationship with CVS at a time when CVS had an exclusive deal with Regeneron for virtually all of the relevant period.  The terms of Amgen's rebate offers to CVS were not accepted and could not have resulted in any foreclosure.  Ms. Alamshaw's supervisor, Mr. Moore, is included as a custodian. |
| | | Nada Obeid-Asad | 2019 - Present | Same for Third-Party Payors and PBMs, Regional Accounts. | Not involved with Optum and ESI contracts that Regeneron claims may have involved agreements made outside the scope of the four corners of the produced contracts.  Responsible for regional accounts only, making up a very small percentage of the third party payors. |
| 8 | Executive Director, US Value & Access | Andy Chiu | 2019 - Apr. 2022 | Amgen's business and pricing strategy and contracting practices with Third-Party Payors and PBMs for Enbrel®, Otezla®, and Repatha®. | Not responsible for negotiating contracts with customers.  Role is primarily internal-facing, focused on pricing and market analytics. |

[1] Custodian has held multiple relevant roles throughout the duration of the relevant time period.

[2] Included in Amgen's Initial Disclosures.

==Highlighting in yellow== indicates that the custodian was offered in Amgen's original proposal of four custodians.

==Highlighting in pink== indicates the two additional custodians offered by Amgen in its conditional compromise proposal that it subsequently revoked.

# Exhibit C

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY  10166-0193
Tel 212.351.4000
gibsondunn.com

Eric J. Stock
Direct: +1 212.351.2301
Fax: +1 212.716.0801
EStock@gibsondunn.com

CONFIDENTIAL

May 16, 2023

<u>VIA E-MAIL</u>

Eric S. Hochstadt
Weil, Gotshal & Manges LLP

Re:     *Regeneron Pharmaceuticals, Inc. v. Amgen Inc.*, 22-cv-00697-RGA-JLH (D. Del.)

Counsel:

We write regarding the proposed custodian list that Regeneron sent on Friday, May 12.  As
you know, for several weeks the parties have been regularly meeting and conferring about
individuals with information potentially relevant to the case, with the goal of agreeing upon a
set of custodians whose documents would be produced in the litigation.  This includes
individuals who would serve as "contract negotiator" custodians—whose documents would
be produced by June 23, 2023 under the Scheduling Order—as well as other custodians
whose documents would be produced by October 17, 2023.  D.I. 67 ¶¶ 9(c), (d).  We
appreciate that both parties have undertaken significant efforts to produce organizational
charts and to provide additional detail about the individuals identified therein.  In light of this
cooperative effort, Amgen had hoped that the parties were well on their way to a reasonable
agreement about how to most productively move discovery forward under the sequenced
discovery schedule adopted by the Court.

We were therefore very disappointed to receive your May 12 proposal, which appears to
demand that <u>sixteen</u> different Amgen individuals serve as "contract negotiator" custodians—
many of whom are not involved with negotiating contracts with third party payors.
Regeneron's proposal is not consistent with the Court's Scheduling Order, which expressly
adopted Amgen's proposal for <u>sequenced</u> discovery, and ordered the parties to agree upon
"custodians involved in contract negotiations."  D.I. 67 ¶ 9(c).  As you know, the purpose of
the sequenced discovery proposal that the Court accepted was to provide the parties with "an
opportunity for potential . . . early motions that could <u>greatly streamline the case, reduce the
burden on the Court</u>, and <u>minimize unnecessary and unwarranted discovery costs for both
sides</u>."  D.I. 59 at 3 (emphasis added).

Amgen remains ready and willing to continue to discuss with you its (and your) proposed list
of custodians in an effort to agree on a proportional set of relevant "contract negotiator"
custodians, and we are available for some period of time each day this week to continue that
conversation.  But Regeneron's list of sixteen individuals—whom you've labeled as

Abu Dhabi · Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles
Munich · New York · Orange County · Palo Alto · Paris · San Francisco · Singapore · Washington, D.C.

**GIBSON DUNN**

Eric S. Hochstadt
Weil, Gotshal & Manges LLP
May 16, 2023
Page 2

"contract-<u>related</u> custodians"—makes us concerned that Regeneron is instead interested in re-litigating the Court's adoption of Amgen's sequenced discovery proposal.  Assuming Regeneron intends for all of these sixteen individuals to be "contract negotiator" custodians, that defines the term so broadly that it effectively reverts to Regeneron's proposal for full-blown discovery by next month—an approach that the Court expressly rejected.

In opposing Amgen's proposal for sequenced discovery that the Court adopted, Regeneron stated that Amgen's proposed schedule "would involve depositions of less than five witnesses."  D.I. 59 at 2.  Similarly, at the scheduling conference on April 4, 2023, I estimated that Amgen's proposal would involve about "four custodians" in the contract negotiator stage.  Tr. of April 4, 2023 Teleconference before Judge Hall at 11:17-18.  That range of four to five custodians made sense because the early motion practice proposed by Amgen was focused on two issues that do not require significant discovery: (1) whether Amgen's contracts involve bundled rebates for Otezla®, and (2) whether the terms of the Optum Commercial contract are not exclusionary such that Plaintiffs' remaining claims relating solely to the ESI Commercial contract would not be sufficient to support its allegations of substantial foreclosure.  D.I. 59 at 3.

But now, rather than following through with what both parties understood to be a schedule involving the production of documents by June from approximately four to five custodians per side—individuals who negotiated the contracts pertinent to Regeneron's Complaint and Amgen's contemplated motions—Regeneron is proposing sixteen "contract-related" custodians that effectively incorporate the entirety of discovery in the case.  After having represented to Amgen multiple times that it expected custodial discovery from approximately ten to twelve custodians per side <u>in total</u> for this case, Regeneron's list of <u>sixteen</u> "contract negotiator" custodians for Amgen, and <u>eleven</u> for itself clearly represents an effort to revert to its original proposal for full discovery by June 2023.

Regeneron has sought to justify its "contract-related" custodian list on a distortion of the Court's instruction that the parties include in their productions at this stage "any documents that are likely to evidence any sort of bundling or any contract terms."  D.I. 67 ¶ 9(c) (quoting Tr. of April 4, 2023 Teleconference before Judge Hall at 19:16-18).  This instruction came as part of a discussion wherein the Court explained that Amgen's production of contracts, plus its negotiator documents, should disclose to Regeneron the relevant terms (especially bundled rebates) of Amgen's agreements with third-party payors, including any terms that may be have been agreed upon directly with third party payors but are not reflected within the four corners of the contracts to be produced by Amgen by May 15.  Amgen's "contract negotiator" custodian list achieves that objective.  But Regeneron

# GIBSON DUNN

Eric S. Hochstadt
Weil, Gotshal & Manges LLP
May 16, 2023
Page 3

appears to be deliberately rewriting that instruction to suggest that the parties must produce documents from a much broader set of individuals, including those who do not negotiate contracts with third party payors but rather are responsible for pricing, marketing, business planning, or other internal-facing activities at Amgen that Regeneron deems relevant to the case. This interpretation completely undermines the purpose of the sequenced discovery order, which was to determine if there are threshold issues in the Complaint that can be addressed earlier in the case prior to undertaking full discovery.

This problem can be seen vividly for proposed custodians like Roland Wandeler, who had a position at Amgen leading the cardiovascular business. All can agree that Mr. Wandeler did not have a position at Amgen that made him a "contract negotiator," yet Regeneron appears to be insisting that he should be a "contract negotiator" custodian. We worry that Regeneron's selection of Mr. Wandeler is emblematic of Regeneron's attempt to re-litigate, rather than implement, the Court's Scheduling Order.

Amgen's contract negotiator custodian proposal is exactly what it (and Regeneron, based on the concerns it expressed in the joint letter) contemplated would be called for under Amgen's sequenced discovery proposal. Amgen has proposed Kave Niksefat, the head of its market access team from 2019-2020, as a custodian, as well as Tom Moore, Amgen's lead external facing negotiator with third party payors from mid-2020 to the present. Given that Regeneron's allegations focus on the Optum and ESI contracts, Amgen has also proposed its account leads for Optum and ESI—Adam Grennan and Billy West—as contract negotiator custodians.

Amgen is willing to further negotiate its "contract negotiator" custodian list and will consider proposals by Regeneron to add a reasonable number of individuals you believe in good faith to be contract negotiators and necessary for Regeneron to oppose Amgen's contemplated early motions. We look forward to continuing that discussion.


Sincerely,

/s/ Eric Stock

Eric Stock

# Exhibit D

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY  10166-0193
Tel 212.351.4000
gibsondunn.com

Eric J. Stock
Direct: +1 212.351.2301
Fax: +1 212.716.0801
EStock@gibsondunn.com

CONFIDENTIAL

May 22, 2023

<u>VIA E-MAIL</u>

Eric S. Hochstadt
Weil, Gotshal & Manges LLP

Re:     *Regeneron Pharmaceuticals, Inc. v. Amgen Inc.*, 22-cv-00697-RGA-JLH (D. Del.)

Counsel:

We write again in response to the proposed custodian list that Regeneron sent on Friday, May 12.  We reiterate the points made in our May 16 letter regarding the adequacy of Amgen's custodian proposal, and our disagreement with Regeneron's interpretation of the Scheduling Order.  Regeneron failed to make any counterproposals in response to our May 16 letter.  However, given the impending discovery deadlines and our desire to resolve this matter cooperatively, we are willing to make a proposed compromise.

For the sake of compromise—and only in the event that Regeneron agrees that this proposal fully resolves the question of "contract negotiator" custodians—we are willing to offer Stephanie Miller and Anita Alamshaw as additional "contract negotiator" custodians.  There are strong reasons why neither of these individuals (nor any others on Regeneron's list that are not on Amgen's list) is needed as a "contract negotiator" custodian.  For example, we are not aware that any of these individuals was substantially involved in negotiating the Optum and ESI/Ascent contracts that are the subject of Regeneron's Complaint and that would be at issue in Amgen's proposed early motions.

As you know, the Scheduling Order contemplates a subsequent production of documents from additional custodians by October 17, 2023, unless the Court stays discovery in light of Amgen's contemplated early motion practice.  Accordingly, in addition to the six custodians that Amgen is offering now, Regeneron may well have the opportunity to seek the production of documents from the remaining ten custodians on its list during this later stage of the case.  While Amgen believes that several of these additional custodians proposed by Regeneron are not proportionate to the needs of the case, we would welcome a discussion of those issues with you at the appropriate time.

Please let us know if you accept our proposal or wish to further discuss.

**GIBSON DUNN**

Eric S. Hochstadt
Weil, Gotshal & Manges LLP
May 22, 2023
Page 2


Sincerely,

*/s/ Eric Stock*

Eric Stock

# Exhibit E

Highly Confidential / Subject to Protective Order – Outside Counsel Only

**Exhibit E:**
**Excerpts of Examples of Irrelevant Requests from FTC Investigative**
**Subpoena Relating to Horizon Transaction**[1]



---

[1] Amgen is willing to provide the entire FTC investigative subpoena to the Court for *in camera* review if the Court so requests.

Highly Confidential /Subject to Protective Order – Outside Counsel Only



Highly Confidential /Subject to Protective Order – Outside Counsel Only



Highly Confidential /Subject to Protective Order – Outside Counsel Only

