# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REGENERON PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMGEN INC., <br><br> Defendant. | C. A. No.: 1:22-cv-00697-JLH |

**REVISED [PROPOSED] ORDER**

On May 27, 2022, Regeneron Pharmaceuticals, Inc. ("Regeneron") sued Amgen Inc. ("Amgen") for violations of, among others, 15 U.S.C. §§ 1, 2, and 14; Cal. Bus. & Prof. Code §§ 16700 et seq.; Cal. Bus. & Prof. Code §§ 17200 et seq.; N.Y. Gen. Bus. Law § 340; Delaware common law; and seeking, among other things, permanent injunctive relief. D.I. 1. On August 28, 2023, Regeneron amended its complaint bringing the same claims. D.I. 124. On September 20, 2023, Amgen answered the Amended Complaint, denying all allegations.

In May 2025, a seven-day jury trial occurred. On May 15, 2025, the jury found that Amgen had violated 15 U.S.C. §§ 1, 2, and 14; Cal. Bus. & Prof. Code §§ 16700 et seq.; N.Y. Gen. Bus. Law § 340; and that Amgen had tortiously interfered with Regeneron's prospective business relationships in violation of Delaware common law. D.I. 478.

Pursuant to 15 U.S.C. §§ 1, 2, and 14; Cal. Bus. & Prof. Code §§ 16700 et seq.; N.Y. Gen. Bus. Law § 340; and Delaware common law; having considered Plaintiff Regeneron Pharmaceuticals, Inc.'s Motion for 1) Permanent Injunctive Relief, 2) Constructive Trust, and 3) Prejudgment Interest; upon consideration of the parties' briefing papers and for good cause shown;

It is hereby ORDERED that the motion is GRANTED, and it is further ORDERED:

**I.     Definitions**

A. "Amgen" means Defendant Amgen Inc. and its directors, officers, managers, agents, employees, representatives, attorneys, successors and assigns, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures.

B. "Large Payors" means Ascent Health Services LLC, Express Scripts Senior Care Holdings, Inc.; Emisar Pharma Services LLC; OptumRx, Inc.; United Healthcare Part D; Zinc Health Services, LLC; CVS Caremark Part D Services, LLC; and Humana Pharmacy Solutions, Inc.; and their directors, officers, managers, agents, employees, representatives, attorneys, successors and assigns, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures.

C. "Other Amgen Product" means any product in which Amgen has a financial interest because it is or was acquired, developed, licensed owned, sold, distributed, marketed, co-commercialized, co-marketed, or co-promoted by Amgen, including, but not limited to, any such product after the date of this Order, except for Repatha.

D. "Fiscal year quarter" means a time period of three (3) months.

E. "Payor" means pharmacy benefit managers, group purchasing organizations, health insurance companies, health plans, or other customers in the PCSK9i market.

F. "PCSK9i" means proprotein convertase subtilisin/kexin type 9 inhibitors dispensed via pharmacy.

G. "Proceeds" means the quarterly net profits of Amgen for Repatha sales in the United States (measured by calculating the total quarterly revenue of Repatha sales, multiplied by 65% profit margin) multiplied by the difference between the total market share of quarterly sales of Praluent and 35%. For illustrative purposes only, if Amgen's net profit for the third quarter is $100 million and Regeneron's quarterly market share is 10%, the Proceeds for the third quarter

2

would be $25 million.

H. "Rebate" means any concession, dollar amount, or change in price provided by Amgen to a payor for items, including payments, discounts, invoice discounts, pharmacy discounts, administrative fees, formulary placement fees, portal fees, data fees, overlays, or any other consideration or thing of value.

I. "Regeneron" means Plaintiff Regeneron Pharmaceuticals, Inc. and its directors, officers, managers, agents, employees, representatives, attorneys, successors and assigns, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures.

## II.   Prohibition on Amgen's Cross-Therapeutic Bundling with Any Payor

A. Amgen shall not, directly, indirectly, explicitly, or implicitly condition any Rebate for, or any contract terms related to, any Other Amgen Product on (i) a Payor's inclusion, purchase, coverage, placement, or positioning of Repatha, or (ii) a Payor's exclusion, purchase, coverage, placement, or positioning of Praluent.

B. No Amgen employee who negotiates access or formulary coverage for Repatha at any Payor may negotiate the access or formulary coverage at any Payor for any Other Amgen Product. Amgen will create an internal firewall protection to prevent Amgen employees who negotiate access or formulary coverage at any Payor for any Other Amgen Products from accessing Payor agreements, rebate terms, offers, and/or proposals for any Payor that provide access or formulary coverage of Repatha.

C. Amgen shall not deviate in any way from, or modify or seek any modification of, the requirements set forth in the solicitation or request for proposal by any Payor for the formulary coverage of Repatha or any PCSK9i product.

D. Amgen shall require, annually, all Amgen employees with direct involvement in contracting or negotiations with Payors related to the purchase, coverage, placement, or

positioning of any pharmacy-dispensed product that could be covered by a PBM to review this Order and acknowledge in writing (including by email) that they understand and are complying with the obligations of the Order.

**III.    Prohibition of Amgen Agreements with Large Payors Impacted by Cross-Therapeutic Bundling**

A. Within ten (10) days of the date of the entry of this Order, Amgen will (i) notify each of the Large Payors that Amgen cannot provide any Rebates on Repatha, beginning January 1, 2026 that Amgen has agreed to provide based on any agreements Amgen has with those Payors prior to the entry of this Order, and (ii) provide to each of the Large Payors a copy of this Order.

**IV.    Prohibition on Amgen Rebating at Large Payors to End Repatha's Monopoly**

A. Amgen cannot submit (i) a Rebate bid for Repatha coverage to any of the Large Payors, nor can Amgen submit (ii) a bid for Repatha to be covered exclusively or in any way preferential to the coverage of Praluent to any of the Large Payors, until the sooner of: (1) Praluent attains a 35% share of PCSK9i products sold in the United States for four (4) consecutive fiscal year quarters or, (2) three (3) years from the date of this Order. If Amgen believes the condition set forth in clause (1) of the preceding sentence is satisfied, Amgen may make a motion to the Court and petition the Compliance Monitor who shall submit a recommendation to the Court, as to whether that condition has been met.  Nothing in this Paragraph IV.A shall prohibit Amgen from selling or offering to sell Repatha in other ways that existed before the entry of this Order or by contracting with the Large Payors to sell Repatha without any Rebate at a list price independently set by Amgen.

B. Amgen shall reimburse Regeneron for its sales and marketing expenses of Praluent, up to an amount equivalent to the average of Amgen's annual sales and marketing expenses for Repatha from 2020 to 2023, until the sooner of: (1) Praluent attains a 35% share of PCSK9i products sold

4

in the United States for four (4) consecutive fiscal year quarters or, (2) three (3) years from the date of this Order. The Compliance Monitor may verify Regeneron's sales and marketing expenses of Praluent.

V. **Required Notice to Payors, Prescribers, and the Public**

    A. Within thirty (30) days of the entry of this Order, Amgen must notify:

        1. Payors, via written communication, that a jury determined that Amgen violated certain federal and state laws in competing with Regeneron's Praluent, hurt competition in the U.S. PCSK9i market, and is prohibited from continuing to offer or pay cross-therapeutic bundled Rebates on Repatha; and

        2. Prescribers, via sales representative visit, and the public, via Amgen's website, that a jury determined that Amgen violated certain federal and state laws in competing with Regeneron's Praluent, hurt competition in the U.S. PCSK9i market, and that Regeneron's Praluent is still available along with a copy of, or hyperlink to, Praluent's FDA-approved product label.

VI. **Compliance Monitoring**

    A. For the purpose of monitoring compliance with this Order, the Court appoints Jeryl L. Hilleman given her similar role in *In the Matter of Amgen Inc. and Horizon Therapeutics plc*, Docket No. 9414, Federal Trade Commission (Dec. 13, 2023), or another neutral mutually agreed-upon and approved by the Court, as the "Compliance Monitor" to observe and report on Amgen's adherence to its obligations as required by this Order.

        1. The Compliance Monitor shall owe duties solely to the Court, shall not be removed except by further order of the Court, and shall have no financial, ownership, employment, or other material relationship with Amgen, other than the

compensation expressly authorized by the Court.

2. The Compliance Monitor shall have the following powers to monitor Amgen's compliance with this Order: to review all communications and agreements between Amgen and the Large Payors involving Repatha rebates and/or formulary coverage; investigate complaints from Regeneron and the Large Payors; and make reports or recommendations to the Court concerning Amgen's adherence to this Order or the Court's enforcement thereof.

3. The Compliance Monitor shall be entitled to receive reimbursement of her or his reasonable fees and costs. The Court shall approve all claims for reimbursement of reasonable fees and costs. Amgen shall pay the Court-approved fees and costs for the Compliance Monitor.

4. If the Compliance Monitor resigns or the Court determines that the Compliance Monitor has ceased to act, has failed to act diligently, or is otherwise unable to continue serving as a Compliance Monitor due to the existence of a conflict or other reasons, the Court may appoint a substitute Compliance Monitor, who shall be afforded all rights, powers, and authorities and shall be subject to all obligations of the Compliance Monitor section of this Order. Regeneron shall select the substitute Compliance Monitor, subject to the consent of Amgen.

B. Within ten (10) days of the appointment of the Compliance Monitor, and any later substitute Compliance Monitor, Amgen will provide the contact information of the Compliance Monitor to each of the Large Payors.

C. Amgen shall submit to the Compliance Monitor written reports ("Compliance Reports") every six (6) months from the entry of this Order. The Compliance Monitor shall review each

6

report and submit a report to this Court concerning Amgen's compliance with this Order within one (1) month from receipt of each Compliance Report.

1. Each Compliance Report shall contain sufficient information and documentation to enable the Compliance Monitor to determine independently whether Amgen is in compliance with this Order. Conclusory statements that Amgen has complied with its obligations under this Order are insufficient. Amgen shall include in its reports, among other information or documentation that may be necessary to demonstrate compliance, copies of correspondence (e.g., emails, letters, texts) with Payors related to the terms of purchase, coverage, placement, or positioning of Repatha in the United States.

2. Amgen shall submit a copy of each Compliance Report, concurrent with its submission to the Compliance Monitor, to counsel of record and Designated Inside Counsel pursuant to D.I. 75 for Regeneron. Amgen may redact from each copy of the Compliance Report any confidential supporting documentation, subject to Regeneron's ability to object to any such redactions and Amgen seeking Court approval of any such objected to redactions.

3. Amgen's Chief Commercial Officer will submit with each Compliance Report a certification, under penalty of perjury pursuant to 28 U.S.C. § 1746, that Amgen has not and will not directly, indirectly, explicitly, or implicitly condition any Rebate for, or any contract terms related to, any Amgen Product on a Payor's inclusion, purchase, coverage, placement, or positioning of Repatha, or a Payor's exclusion, purchase, coverage, placement, or positioning of Praluent.

**VII. Constructive Trust**

A. The Compliance Monitor is also hereby appointed as Trustee of the Constructive Trust.

B. Within 14 (fourteen) days of the entry of this Order, Amgen must pay to the Trustee an amount equal to $618.2 million, calculated by using Amgen's pre-scheme profit margin on Repatha of 65% and Praluent's adjusted market share of 25%. The Trustee shall promptly pay such amount to Regeneron.

C. Starting for the third quarter of Fiscal Year 2025, and for each fiscal quarter thereafter until the Constructive Trust is dissolved, the Trustee shall calculate the Proceeds using (i) Amgen's public quarterly reports to obtain Amgen's total quarterly revenue for Repatha sales, and (ii) Regeneron's public quarterly reports to obtain Regeneron's percentage of quarterly sales in the PCSK9i market. The parties shall provide such other related information as the Trustee may reasonably request.

D. As soon as practicable following the end of each fiscal quarter, the Trustee shall provide to the parties a calculation of the Proceeds to be paid by Amgen to the Trustee. Within five (5) business days of receiving the calculation of Proceeds from the Trustee, Amgen shall pay such amount to the Trustee. The Trustee shall promptly pay any Proceeds received to Regeneron.

E. The Constructive Trust shall be dissolved and Amgen's payment obligation shall be terminated when Regeneron's market share of PCSK9i sales reaches 35% for four (4) consecutive fiscal year quarters.

**VIII. Retention of Jurisdiction**

A. This Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

B. Amgen cannot circumvent this Order directly or indirectly, including, but not limited to,

8

materially changing how Amgen has chosen to distribute, charge for, promote, manufacture, offer financial or other co-pay assistance for, formulate, or otherwise manage the sale of Repatha.

## IX. Expiration

A. With the exception of Paragraph IV.A., this Order shall terminate on December 31, 2032.

## X. Pre-Judgment Interest

A. Regeneron is awarded pre-judgment interest on its tortious interference claim arising from the dates of harm beginning in January 2021, for a pre-judgment interest award of $31.1 million.

B. Regeneron is awarded pre-judgment interest on its Donnelly Act claim at a rate of 9% arising from the dates of harm beginning in January 2021, for a pre-judgment interest award of $22.2 million.

C. Regeneron is awarded pre-judgment interest on its Sherman Act Section 1, Sherman Act Section 2, and Clayton Act Section 3 claims for a pre-judgment interest award of $16.4 million.

D. Regeneron is awarded pre-judgment interest on its Cartwright Act claim at a rate of 10% for a pre-judgment interest award of $45.2 million.

E. Judgment will be amended to reflect the above prejudgment interest amounts in accordance with the Judgment Following Jury Verdict. D.I. 490.

        SO ORDERED this_____day of_____, 2025.

        _____
        United States District Judge